Robert A. Bailey (#214688)
 rbailey@afrct.com
Michael Rapkine (#222811)
 mrapkine@afrct.com
ANGLIN, FLEWELLING, RASMUSSEN,
 CAMPBELL & TRYTTEN LLP
199 South Los Robles Avenue, Suite 600
Pasadena, California 91101-2459
Tel:  (626) 535-1900 | Fax:  (626) 577-7764

Attorneys for Defendant
WELLS FARGO BANK, N.A., successor by
merger with Wells Fargo Bank Southwest, N.A.,
f/k/a Wachovia Mortgage, FSB and World Savings
Bank, FSB ("Wells Fargo")

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION

| | |
|---|---|
| ROSEMARY GREENE, | CASE NO.:  4:15-CV-00048-JSW |
| Plaintiff, | [The Hon. Jeffrey S. White] |
| v. | **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT WELLS FARGO'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** |
| WELLS FARGO BANK, N.A., | |
| Defendant. | |
| | Date:      July 31, 2015 |
| | Time:     9:00 a.m. |
| | Ctrm:     5 (2nd Floor) |

Pursuant to Rule 201(b)(2) of the Federal Rules of Evidence, defendant WELLS FARGO

BANK, N.A., successor by merger with Wells Fargo Bank Southwest, N.A., formerly known as

Wachovia Mortgage, FSB and World Savings Bank, FSB ("Wells Fargo") hereby requests that

the Court take judicial notice of the following documents submitted in support of its motion to

dismiss the second amended complaint:

/ / /

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1.      Certificate of Corporate Existence dated April 21, 2006, Office of Thrift Supervision, Department of the Treasury (attached as Exhibit A).

2.      Letter dated November 19, 2007, Office of Thrift Supervision, Department of the Treasury (attached as Exhibit B).

3.      Charter of Wachovia Mortgage, FSB dated December 31, 2007. (attached as Exhibit C).

4.      Official Certification of the Comptroller of the Currency ("OCC") stating that effective November 1, 2009, Wachovia Mortgage, FSB converted to Wells Fargo Bank Southwest, N.A., which then merged with and into Wells Fargo Bank, N.A. (attached as Exhibit D).

5.      Federal Deposit Insurance Corporation ("FDIC") profile and history of World Savings Bank, FSB, dated March 14, 2012, from the FDIC's official website, reflecting its transition to Wells Fargo Bank, N.A. (attached as Exhibit E).

6.      Deed of Trust dated April 25, 2007 and recorded in the official records of the Alameda County Recorder's Office on April 30, 2007 as Document No. 2007167560 (attached as Exhibit F).

7.      Notice of Default and Election to Sell Under Deed of Trust dated August 23, 2013 and recorded in the official records of the Alameda County Recorder's Office on August 28, 2013 as Document No. 2013291908 (attached as Exhibit G).

8.      Complaint filed by plaintiff in the Alameda County Superior Court on May 14, 2013, Case No. RG-13-679537 (attached as Exhibit H).

9.      United States District Court, Northern District (San Francisco) Civil Docket relating to *Rosemary Greene v. Wells Fargo Home Mortgage*, Case No. 3:13-cv-02774-WHA (attached as Exhibit I).

10.     Notice of Trustee's Sale dated November 3, 2014 and recorded in the official records of the Alameda County Recorder's Office on November 7, 2014 as Document No. 2014270359 (attached as Exhibit J).

/ / /

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1    Judicial notice is appropriate for Exhibits A through E, because these records are true and

2    correct copies of documents reflecting official acts of the executive branch of the United States.

3    *See* Fed. R. Evid. 201(b).  Furthermore, judicial notice is appropriate for information obtained

4    from governmental websites. *Paralyzed Veterans of Am. v. McPherson*, 2008 U.S. Dist. LEXIS

5    69542, *17-18 (N.D. Cal. Sept. 8, 2008) (court took judicial notice of information appearing on

6    and printed from official government websites -- citing numerous decisions from federal circuits

7    and district courts all approving judicial notice of information obtained from government

8    websites); see also, *Hite v. Wachovia Mortg.*, 2010 U.S. Dist. LEXIS 57732, *6-9 (E.D. Cal.

9    June 10, 2010) (court took judicial notice of the exact documents that Wells Fargo introduces in

10   Exhibits A and E above).

11   Judicial notice is appropriate for Exhibits F, G and J because these documents are true

12   and correct copies of official public records of the Alameda County Recorder's Office, whose

13   authenticity is capable of accurate and ready determination by resort to sources whose accuracy

14   cannot reasonably be questioned. See e.g., *Gamboa v. Tr. Corps & Cent. Mortg. Loan Servicing

15   Co.*, 2009 U.S. Dist. LEXIS 19613, *4-10 (N.D. Cal. Mar. 12, 2009) (court took judicial notice

16   of recorded documents related to the foreclosure sale, including grant deed and deed of trust:

17   "[t]hese documents are also part of the public record and are easily verifiable.  See Fed. R. Evid.

18   201(b); *Castillo-Villagra v. INS*, 972 F.2d 1017, 1026 (9th Cir. 1992) (holding that notice may be

19   taken of facts capable of accurate and ready determination by resort to sources whose accuracy

20   cannot reasonably be questioned).").

21   Judicial notice is appropriate for Exhibits H and I because these documents are true and

22   correct copies of official records of the United States District Court for the Northern District of

23   California and the Alameda County Superior Court.  The authenticity of these court records "is

24   not subject to reasonable dispute because [they] . . . can be accurately and readily determined

25   from sources whose accuracy cannot reasonably be questioned."  FED. R. EVID. 201(b)(2).

26   Furthermore, judicial notice is appropriate for information obtained from government websites.

27   *Paralyzed Veterans of Am. v. McPherson*, No. C 06-4670, 2008 U.S. Dist. LEXIS 69542, at *17–

28   18 (N.D. Cal. Sept. 8, 2008) (court took judicial notice of information appearing on and printed

1

2  from official government websites, citing numerous decisions from federal circuits and district

3  courts, all approving judicial notice of information obtained from government websites).

4

5                                        Respectfully submitted,

6  Dated:  June 8, 2015                  ANGLIN, FLEWELLING, RASMUSSEN,
                                         CAMPBELL & TRYTTEN LLP
7

8                                        By:   _/s/  Michael Rapkine_____
                                              Michael Rapkine
9                                             mrapkine@afrct.com
                                         Attorneys for Defendant
10                                       WELLS FARGO BANK, N.A., successor by
                                         merger with Wells Fargo Bank Southwest, N.A.,
11                                       f/k/a Wachovia Mortgage, FSB, f/k/a World
                                         Savings Bank, FSB ("Wells Fargo")
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT A



**Office of Thrift Supervision**
Department of the Treasury

1700 G Street, N.W., Washington, D.C. 20552 • (202) 906-6000

**April 21, 2006**

## CERTIFICATE OF CORPORATE EXISTENCE

**REFERENCE:** World Savings Bank, FSB
Oakland, California

I, Nadine Y. Washington, Corporate Secretary, Office of Thrift Supervision, hereby certify, according to the records of the Office of Thrift Supervision, Department of the Treasury, Washington, DC:

1. World Savings Bank, FSB, Oakland, California, was chartered under the laws of the United States to transact the business of a Federal savings bank;

2. The charter of World Savings Bank, FSB, Oakland, California, is in full force and effect;

3. The Office of Thrift Supervision has not appointed a conservator or receiver for World Savings Bank, FSB, Oakland, California; and

4. As of April 21, 2006, World Savings Bank, FSB, Oakland, California, is operating as a BIF-insured financial institution.

Nadine Y. Washington
**Corporate Secretary**

EXHIBIT B



**Office of Thrift Supervision**                                  *Nicholas J. Dyer*
Department of the Treasury                              *Assistant Regional Director*

Pacific Plaza, 2001 Junipero Serra Boulevard, Suite 650, Daly City, CA 94014-1976
P.O. Box 7165, San Francisco, CA 94120-7165 • Telephone: (650) 746-7025 • Fax: (650) 746-7001

November 19, 2007

John A. Stoker, Esq.
Vice President and Assistant General Counsel
Wachovia Corporation
Legal Division – NC0630
One Wachovia Center
301 South Charlotte Street
Charlotte, NC 28288

Re: World Savings Bank, FSB, Oakland, California
Notice of Amendment of Charter and Bylaws

Dear Mr. Stoker:

This is in response to your letter, dated November 8, 2007, with enclosures, which you filed with the Office of Thrift Supervision (OTS) on behalf of World Savings Bank, FSB to amend the savings bank's charter and bylaws to change its name to Wachovia Mortgage, FSB and reflect a change in the location of its home office. The new home office address is 6825 Aliante Parkway, North Las Vegas, Nevada.

The institution met the requirements of 12 C.F.R. §§ 552.4(b) and 552.5(b)(2), and the proposed amendments will be effective December 31, 2007, as set forth in the Board of Directors' resolution adopting the changes to the charter and bylaws. The filing also met the requirement of 12 C.F.R. § 545.91(b) that the savings bank notify the OTS if there is a change in the permanent address of its home office.

Please feel free to contact me at (650) 746-7025 if there are any questions.

Sincerely,

Nicholas J. Dyer
Assistant Regional Director

cc:  Robert Burns, FDIC - Atlanta

EXHIBIT C

Charter No. <u>7971</u>
Docket No. 12642

## CHARTER OF WACHOVIA MORTGAGE, FSB

Section 1. <u>Corporate title.</u> The full corporate title of the savings bank is Wachovia Mortgage, FSB ("the savings bank").

Section 2. <u>Office.</u> The home office of the savings bank shall be located in North Las Vegas, Nevada.

Section 3. <u>Duration.</u> The duration of the savings bank is perpetual.

Section 4. <u>Purpose and Powers.</u> The purpose of the savings bank is to pursue any or all of the lawful objectives of a Federal savings bank chartered under section 5 of the Home Owners' Loan Act and to exercise all of the express, implied, and incidental powers conferred thereby and by all acts amendatory thereof and supplemental thereto, subject to the Constitution and laws of the United States as they are now in effect, or as they may hereafter be amended, and subject to all lawful and applicable rules, regulations, and orders of the Office of Thrift Supervision ("OTS").

Section 5. <u>Capital Stock.</u> The total number of share of all classes of the capital stock which the savings bank has the authority to issue is 30,000, all of which shall be common stock of par value of $10.00 per share. The shares may be issued from time to time as authorized by the board of directors without the approval of its shareholders, except as otherwise provided in this Section 5 or to the extent that such approval is required by governing law, rule, or regulation. The consideration for the issuance of the shares shall be paid in full before their issuance and shall not be less than the par value. Neither promissory notes nor future services shall constitute payment or part payment for the issuance of shares of the savings bank. The consideration for the shares shall be cash, tangible or intangible property (to the extent direct investment in such property would be permitted to the savings bank), labor, or services actually performed for the savings bank, or any combination of the foregoing. In the absence of actual fraud in the transaction, the value such property, labor, or services, as determined by the board of directors of the savings bank, shall be conclusive. Upon payment of such consideration, such shares shall be deemed to be fully paid and nonassessable. In the case of a stock dividend, that part of the surplus of the savings bank which is transferred to stated capital upon the issuance of shares as a share dividend shall be deemed to be the consideration for their issuance.

No shares of common stock shall be issued, directly or indirectly, to officers, directors, or controlling persons of the savings bank other than as part of a general public offering or as qualifying shares to a director, unless the issuance or the plan under which they would be issues has been approved by a majority of the total votes eligible to be cast at a legal meeting.

**EXHIBIT C to RJN iso
Motion to Dismiss SAC - Page 7**

The holders of the common stock shall exclusively possess all voting power. Each holder of shares of common stock shall be entitled to one vote for each share held by such holder, except as to the cumulation of votes for election of directors. In the event of any liquidation, dissolution, or winding up of the savings bank, the holder of the common stock shall be entitled, after payment or provision for payment of all debts and liabilities of the savings bank, to receive the remaining assets of the savings bank available for distribution, in cash or in kind. Each share of common stock shall have the same relative rights as and be identical in all respects with all the other shares of common stock.

Section 6. <u>Preemptive rights.</u> Holders of the capital stock of the savings bank shall not be entitled to preemptive rights with respect to any shares of the savings bank which may be issued.

Section 7. <u>Directors.</u> The savings bank shall be under the direction of a board of directors. The authorized number of directors, as stated in the savings bank's bylaws, shall not be fewer than five nor more than fifteen except when a greater number is approved by the Director of the OTS.

Section 8. <u>Amendment of charter.</u> Except as provided in Section 5, no amendment, addition, alteration, change or repeal of this charter shall be made, unless such is first proposed by the board of directors of the savings bank, then preliminarily approved by the OTS, which preliminary approval may be granted by the OTS pursuant to regulations specifying preapproved charter amendments, and thereafter approved by the shareholders by a majority of the total votes eligible to be cast at a legal meeting. Any amendment, addition, alternation, change, or repeal so acted upon shall be effective upon filing with the OTS in accordance with regulatory procedures or on such other date as the OTS may specify in its preliminary approval.

Attest: _____

       Mark C. Treanor, Secretary
       Wachovia Mortgage, FSB

Attest: _____

       Benjamin P. Jenkins, III, Chairman, President & CEO
       Wachovia Mortgage, FSB

Attest: _____

       Secretary of the Office of Thrift Supervision

Attest: _____

       Director of the Office of Thrift Supervision

Effective Date: December 31, 2007

336527v4

EXHIBIT C to RJN iso
Motion to Dismiss SAC - Page 8

## SECRETARY'S CERTIFICATE
## WACHOVIA MORTGAGE, FSB

I, Hope Armstrong Howe, Assistant Secretary of Wachovia Mortgage, FSB (the "Bank") do hereby certify the following:

1.  Attached hereto as Charter No. 7971, is a true and complete copy of the Charter of Wachovia Mortgage, FSB (the "Charter") effective December 31, 2007 and signed by the Secretary and the Director of the Office of Thrift Supervision, and that said Charter is now in full force and effect.

**IN WITNESS WHEREOF**, I have hereunto subscribed my name and affixed the seal of the Bank on this 16th day of March, 2009.

(SEAL)

_Hope Armstrong Howe_
_____
Hope Armstrong Howe
Assistant Secretary
Wachovia Mortgage, FSB

EXHIBIT C to RJN iso
Motion to Dismiss SAC - Page 9

EXHIBIT D



Comptroller of the Currency
Administrator of National Banks

Large Bank Licensing

November 1, 2009

Mr. James E. Hanson
Vice President
Wells Fargo Bank, National Association
90 South Seventh Street
Minneapolis, MN 55479

Re:    Application to convert Wachovia Mortgage, FSB, North Las Vegas, Nevada to a national
        bank and application to merge the converted bank with and into Wells Fargo Bank,
        National Association, Sioux Falls, South Dakota
        Application Control Numbers:  2009-ML-01-0007 and 2009-ML-02-0010

Dear Mr. Hanson:

This letter is the official certification of the Comptroller of the Currency (OCC) of the
conversion of Wachovia Mortgage FSB, North Las Vegas, Nevada to a national bank with the
name Wells Fargo Bank Southwest, National Association, effective November 1, 2009.  This is
also the official certification to merge Wells Fargo Bank Southwest, National Association with
and into Wells Fargo Bank, National Association, Sioux Falls, South Dakota, effective
November 1, 2009.

If you have questions regarding this letter, please contact me at (202) 874-5294 or by email at:
Stephen.Lybarger@occ.treas.gov .  Please reference the application control number or numbers
in any correspondence.

Sincerely,

Stephen A. Lybarger
Large Bank Licensing Lead Expert

EXHIBIT E

FDIC:Bank Find

# FDIC
**Federal Deposit
Insurance Corporation**
Each depositor insured at least $250,000 per insured bank



Advanced Search

Home > Industry Analysis > Bank Data & Statistics > Institution Directory > Bank Find

FDIC

Bank Find

Institution Directory Home

**Back to Search Bank Find**

**History of World Savings Bank, Fsb, Sioux Falls, New Jersey (FDIC Cert: 27076)**
**Note: This institution is currently part of Wells Fargo Bank, National Association, Sioux Falls, South Dakota (FDIC Cert: 3511)**

| | Date | Event |
|---|---|---|
| 1 | 10/8/1987 | Institution established. Original name: Watchung Hills Bank For Savings (27076) |
| 2 | 1/21/1995 | Changed name to **World Savings Bank, F.S.B. (27076).** |
| 3 | 1/21/1995 | Changed primary regulatory agency from Federal Deposit Insurance Corporation to Office Of Thrift Supervision. |
| 4 | 7/24/1996 | Moved bank headquarters from Warren, New Jersey to El Cajon, California. |
| 5 | 8/30/1996 | Moved bank headquarters from El Cajon, California to Oakland, California. |
| 6 | 12/31/2000 | Acquired World Savings And Loan Association, A Federal Savings And Loan Associati (31315) in Oakland, California. |
| 7 | 4/16/2001 | Changed name to **World Savings Bank, Fsb (27076).** |
| 8 | 12/31/2007 | Changed name to **Wachovia Mortgage, Fsb (27076).** |
| 9 | 12/31/2007 | Moved bank headquarters from Oakland, California to North Las Vegas, Nevada. |
| 10 | 11/1/2009 | Changed name to **Wells Fargo Bank Southwest, National Association (27076).** |
| 11 | 11/1/2009 | Changed primary regulatory agency from Office Of Thrift Supervision to Comptroller Of The Currency. |
| 12 | 11/1/2009 | Changed organization type to Commercial Bank. |
| 13 | 11/1/2009 | Changed institution class to Insured Commercial Bank, National, Member Frs. |
| 14 | 11/1/2009 | **Merged into and subsequently operated as part of Wells Fargo Bank, National Association in Sioux Falls, South Dakota (3511)** |
| 15 | 11/7/2009 | Acquired Wachovia Bank Of Colorado, Interim National Association (59019) in Denver, Colorado. |
| 16 | 3/20/2010 | Acquired Wachovia Bank, National Association (33869) in Charlotte, North Carolina. |
| 17 | 3/20/2010 | Acquired Wachovia Bank Of Delaware, National Association (33931) in Wilmington, Delaware. |
| 18 | 4/10/2010 | Acquired Wachovia Card Services, National Association (58496) in Atlanta, Georgia. |
| 19 | 5/10/2010 | Acquired Wells Fargo Hsbc Trade Bank, National Association (34075) in San Francisco, California. |
| 20 | 11/1/2010 | Acquired Wells Fargo Alaska Trust Company, National Association (57755) in Anchorage, Alaska. |
| 21 | 3/31/2011 | Acquired Wells Fargo Central Bank (26839) in Calabasas, California. |

Back

EXHIBIT E to RJN iso
Motion to Dismiss SAC - Page 11

EXHIBIT F

RECORDING REQUESTED BY · CHICAGO TITLE COMPANY

RECORDING REQUESTED BY:
**WORLD SAVINGS BANK**
TO : 59012459

WHEN RECORDED MAIL TO:
**WORLD SAVINGS BANK**
**FINAL DOCUMENTATION**
**CLOSING DEPARTMENT**
**P.O. BOX 659548**
**SAN ANTONIO, TX 78265-9548**

LOAN NUMBER: 0045892312

NOTE AMOUNT: $661,600.00

APN : 043A-4662-081-00

2007167560   04/30/2007 08:30 AM
OFFICIAL RECORDS OF ALAMEDA COUNTY
PATRICK O'CONNELL
RECORDING FEE              58 00

17  PGS

*Received*
*MAY 2 3 2007*
*Deanna Acree*

FOR RECORDER'S USE ONLY

## DEED OF TRUST

**THIS IS A FIRST DEED OF TRUST WHICH SECURES A NOTE WHICH CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY PAYMENT AMOUNT AND PRINCIPAL BALANCE (INCLUDING FUTURE ADVANCES AND DEFERRED INTEREST). AT LENDER'S OPTION THE SECURED NOTE MAY BE RENEWED OR RENEGOTIATED.**

**THE MAXIMUM AGGREGATE PRINCIPAL BALANCE SECURED BY THIS DEED OF TRUST IS $827,000.00 WHICH IS 125% OF THE ORIGINAL PRINCIPAL NOTE AMOUNT.**

I.    **DEFINITIONS OF WORDS USED IN THIS DEED OF TRUST**
      **(A)  Security Instrument.** This Deed of Trust, which is dated **April 25, 2007,** will be called the "Security Instrument "

      **(B)  Borrower. ROSEMARY GREENE, AN UNMARRIED WOMAN** sometimes will be called "Borrower" and sometimes simply "I" or "me "

      **(C)  Lender. WORLD SAVINGS BANK, FSB,  ITS SUCCESSORS AND/OR ASSIGNEES,** will be called "Lender." Lender is a **FEDERAL SAVINGS BANK,** which is organized and exists under the laws of the United States. Lender's address is  **1901 Harrison Street, Oakland, CA 94612** .



0 0 3

LENDER'S USE ONLY

SD001A (2004-03-3)
DEFERRED INTEREST

CA

Page 1

0045892312

**(D) Note.** The note signed by Borrower and having the same date as this Security Instrument, including all extensions, renewals, substitutions and modifications thereof, will be called the "Note " The Note shows that I owe Lender the original principal amount of U.S **$661,600.00**, plus accrued and deferred interest and such other amounts as stated in the Note I have promised to pay this debt in regularly scheduled periodic payments as provided in the Note and to pay the debt in full by **May 1, 2037** ("Maturity Date")

**(E) Property.** The property that is described below in Section III entitled "Description of the Property" will be called the "Property."

**(F) Sums Secured.** The amounts described below in Section II entitled "Borrower's Transfer of Rights in the Property" sometimes will be called the "Sums Secured "

**(G) Person.** Any person, organization, governmental authority or other party will be called "Person "

**(H) Trustor, Beneficiary, Trustee.** Borrower is the "Trustor," Lender is the "Beneficiary" and **Golden West Savings Association Service Co., A California Corporation** is the "Trustee "

## II.     BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY

I irrevocably grant and convey the Property to the Trustee, in trust for Lender, with a power of sale subject to the terms of this Security Instrument This means that, by signing this Security Instrument, I am giving Lender and Trustee those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who are beneficiaries of a deed of trust and to trustees of a deed of trust. I am giving Lender and Trustee these rights to protect Lender from possible losses that might result if I fail to:

(i)     pay all amounts owed to Lender under the Note and all other notes secured by this Security Instrument, called the "Secured Notes," including future advances made by Lender and any changes to the Secured Notes made with the written consent of Lender,

(ii)     pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 below to protect the value of the Property and Lender's rights in the Property, and

(iii)     keep all of my other promises and agreements under this Security Instrument, the Secured Notes and any changes to the Secured Notes made with the written consent of Lender

## III.     DESCRIPTION OF THE PROPERTY

I give Trustee rights in the Property described below:

(i)     The Property which is located at **8000 HANSOM DR, OAKLAND, CA 94605-4209**. The legal description of the Property is attached as Exhibit "A" which is made a part of this Security Instrument This Property is called the "Described Property."

(ii)     All buildings and other improvements that are located on the Described Property,

SD001B (2004-03-3)
DEFERRED INTEREST                    Page 2

CA

EXHIBIT F to RJN iso
Motion to Dismiss SAC - Page 13

0045892312

(iii)     All rights in other property that I have as owner of the Described Property. These rights are known as easements, rights and appurtenances attached to the Property,

(iv)     All rents or royalties and other income from the Described Property,

(v)     All mineral, oil and gas rights and profits, water rights and stock that are part of the Described Property,

(vi)     All rights that I have in the land which lies in the streets or roads in front of, behind or next to, the Described Property,

(vii)     All fixtures that are now or in the future will be on the Described Property or on the property described in subsection (ii) of this Section,

(viii)     All of the rights and property described in subsections (ii) through (vii) of this Section that I acquire in the future,

(ix)     All replacements of or additions to the property described in subsections (ii) through (viii) of this Section, and

(x)     All of the amounts that I pay to Lender under Paragraph 2 below.

## IV.     BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that· (i) I lawfully own the Property; (ii) I have the right to grant and convey the Property to Trustee; and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself and the Trustee has some of the rights in the Property which I promise that I have  I promise that I will defend my ownership of the Property against any claims of such rights

### COVENANTS

I promise and I agree with Lender as follows.

### 1.     BORROWER'S PROMISE TO PAY

I will pay to Lender, on time, all principal and interest due under the Secured Notes and any prepayment and late charges due under the Secured Notes

### 2.     PAYMENTS FOR TAXES AND INSURANCE

#### (A)     Borrower's Obligations

I will pay all amounts necessary to pay taxes and hazard insurance premiums on the Property as well as assessments, leasehold payments, ground rents or mortgage insurance premiums (if any).

SD001C (2004-03-3)

CA

EXHIBIT F to RJN iso
Motion to Dismiss SAC - Page 14

0045892312

**(B)     Escrow Accounts**

Subject to applicable law, no escrow shall be required except upon written demand by Lender, in which case, I shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum ("Funds") for  (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property, (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums, (d) yearly flood insurance premiums, if any; and (e) yearly mortgage insurance premiums, if any  These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U S.C. § 2601 et seq  ("RESPA"), unless another law that applies to the Funds sets a lesser amount  If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount  Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items in accordance with applicable law

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items  Lender may not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and/or applicable law permits Lender to make such a charge  However, Lender may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay me any interest or earnings on the Funds  Lender shall give to me, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to me for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify me in writing, and, in such case I shall pay to Lender the amount necessary to make up the deficiency or shortage  I shall make up the deficiency or shortage in accordance with the requirements of the Lender, at its sole discretion, in the manner and times prescribed by RESPA.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to me any Funds held by Lender. If, under Paragraph 28, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument

SD001D (2004-03-3)

CA

EXHIBIT F to RJN iso
Motion to Dismiss SAC - Page 15

0045892312

### 3.    APPLICATION OF BORROWER'S PAYMENTS

Unless applicable law requires otherwise, Lender will apply each of my payments under the Secured Notes and under Paragraphs 1 and 2 above in the following order and for the following purposes:

First, to pay prepayment charges due under the Secured Notes;

Second, to pay any advances due to Lender under this Security Instrument,

Third, to pay the amounts due to Lender under Paragraph 2 above;

Fourth, to pay interest due under the Secured Notes,

Fifth, to pay deferred interest due under the Secured Notes,

Sixth, to pay principal due under the Secured Notes,

Last, to pay late charges due under the Secured Notes

### 4.    BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS

I will pay all taxes, assessments and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument

I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property  I will pay these amounts either by making the payments to Lender that are described in Paragraph 2 above or by making the payments on time to the Person owed them

Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a **lien.** I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves in writing the way in which I agree to pay that obligation, or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that Person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give to me a notice identifying the superior lien. I will pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice

### 5.    BORROWER'S OBLIGATION TO MAINTAIN INSURANCE

At my sole cost and expense, I will obtain and maintain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage  The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. All of these insurance policies and renewals of the policies must include what is known as a **Standard Mortgagee Clause** to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals  If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

CA

EXHIBIT F to RJN iso
Motion to Dismiss SAC - Page 16

0045892312

If I obtain earthquake insurance, any other hazard insurance, credit life and/or disability insurance, or any other insurance on or relating to the Property or the Secured Notes and which are not specifically required by Lender, I will name Lender as loss payee of any proceeds.

If there is a loss or damage to the Property, I will promptly notify the proper insurance company and Lender If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so

The amount paid by the insurance company is called "Proceeds " Any Proceeds received will be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the Proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion, regardless of any impairment or lack of impairment of security, as follows· (A) to the extent allowed by applicable law, to the Sums Secured in a manner that Lender determines and/or (B) to the payment of costs and expenses of necessary repairs or to the restoration of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender or the insurance company stating that the insurance company has offered to settle a claim, Lender may collect the Proceeds. I will notify Lender immediately of any offer to settle a claim I receive from the insurance company I will immediately deliver any Proceeds I receive from any insurer or other persons to Lender Lender may use the Proceeds to repair or restore the Property or to pay the Sums Secured The 30-day period will begin when the notice is given.

If any Proceeds are used to reduce the amount of the outstanding balance of the Sums Secured, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above However, Lender and I may agree in writing to delays or changes

If Lender acquires the Property under Paragraph 28 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any Proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those Proceeds will not be greater than the total amount of the Sums Secured immediately before the Property is acquired by Lender or sold

If I am required by Lender to pay premiums for mortgage insurance, I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law

## 6. BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE OBLIGATIONS

I will keep the Property in good repair including, but not limited to, keeping the Property free from debris, mold, termites, dry rot and other damaging pests and infestations. I will not destroy or substantially change the Property and I will not allow the Property to deteriorate. I will keep and maintain the Property in compliance with any state or federal health and safety laws, and hazardous materials and hazardous waste laws I will not use, generate, manufacture or store any hazardous materials or hazardous waste on, under or about the Property I will indemnify, defend and hold harmless Lender and its employees, officers and directors and their successors from any claims, damages or costs for required or necessary repair or the removal of mold, termites, dry rot, other damaging pests and infestations and hazardous waste or any other hazardous materials claim. If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

EXHIBIT F to RJN iso
Motion to Dismiss SAC - Page 17

0045892312

## 7.     LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY

If. (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (including but not limited to any manner of legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever it deems reasonable or appropriate to protect the Lender's rights in the Property. Lender's actions may include, without limitation, appearing in court, paying reasonable attorneys' fees, purchasing insurance required under Paragraph 5, above (such insurance may cost more and provide less coverage than the insurance I might purchase), and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions. Although Lender may take action under this Paragraph 7, Lender does not have to do so. Any action taken by Lender under this Paragraph 7, will not release me from my obligations under this Security Instrument

I will pay to Lender any amounts which Lender advances under this Paragraph 7 with interest, at the interest rate in effect under the Secured Notes. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. Interest on each amount will begin to accrue on the date that the amount is advanced by Lender. However, Lender and I may agree in writing to terms that are different from those in this Paragraph 7. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest

## 8.     LENDER'S RIGHT TO INSPECT THE PROPERTY

Lender, and others authorized by Lender, may enter upon and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection

## 9.     AGREEMENTS ABOUT GOVERNMENTAL TAKING OF THE PROPERTY

I assign to Lender all my rights· (A) to proceeds of all awards or claims for damages resulting from condemnation, eminent domain or other governmental taking of all or any part of the Property; and (B) to proceeds from a sale of all or any part of the Property that is made to avoid condemnation, eminent domain or other governmental taking of the Property. All of those proceeds will be paid to Lender. If I receive any such proceeds, I will immediately deliver them to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the Sums Secured have been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, Sums Secured will be reduced only by the amount of proceeds multiplied by the following fraction. (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds and settle the claim. Lender may then use the proceeds to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of the outstanding principal of the Secured Notes, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

SD001G (2004-03-3)

CA

0045892312

**10. CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS**

**(A)    Borrower's Obligations**

Lender may allow a Person who takes over my rights and obligations subject to this Security Instrument to delay or to change the amount of the payments of principal and interest due under the Secured Notes or under this Security Instrument. Even if Lender does this, however, that Person and I will both still be fully obligated under the Secured Notes and under this Security Instrument.

Lender may allow those delays or changes for a Person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a Person for not fulfilling obligations under the Secured Notes or under this Security Instrument, even if Lender is requested to do so

**(B)    Lender's Rights**

Even if Lender does not exercise or enforce any of its rights under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 28 below to demand that I make immediate payment in full of the Sums Secured

**11. OBLIGATIONS OF BORROWER, CO-SIGNORS AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS**

Except as provided below, if more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured.

Any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signor") (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signor's interest in the Property under the terms of this Security Instrument, (b) is not personally obligated to pay the sums secured by this Security Instrument, and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signor's consent.

Any Person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument

**12. MAXIMUM LOAN CHARGES**

If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then  (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the outstanding principal balance of the Secured Notes or by making a direct payment to Borrower  If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Secured Notes

0045892312

**13.    LEGISLATION AFFECTING LENDER'S RIGHTS**

If a change in applicable law would make any provision of the Secured Notes or this Security Instrument unenforceable, Lender may require that I make immediate payment in full of all Sums Secured by this Security Instrument

**14.    NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT**

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method   The notice will be addressed to me at **8000 HANSOM DR, OAKLAND, CA  94605-4209**  A notice will be given to me at an alternative address if I give Lender notice of my alternative address  I may give notice to Lender of my alternative address in writing or by calling Lender's customer service telephone number provided on my billing statement   I may designate only one mailing address at a time for notification purposes. Except as permitted above for changes of address, any notice that must be given to Lender under this Security Instrument will be given by mailing it by first class mail to Lender's address stated in Section I (C) above entitled, "Definitions of Words Used In This Deed of Trust," unless Lender gives me notice of a different address  Any notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

**15.    GOVERNING LAW; SEVERABILITY**

**This Security Instrument and the Secured Notes shall be governed by and construed under federal law and federal rules and regulations, including those for federally chartered savings institutions ("Federal Law") and, to the extent Federal Law does not apply, by the law of the jurisdiction in which the Property is located**. In the event that any of the terms or provisions of this Security Instrument or the Secured Notes are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Security Instrument or the Secured Notes.

**16.    BORROWER'S COPY**

I acknowledge the receipt of one conformed copy of the Secured Notes and of this Security Instrument

**17.    LENDER'S RIGHTS TO RENTAL PAYMENTS AND TO TAKE POSSESSION OF THE PROPERTY**

If Lender requires immediate payment in full or if I abandon the Property, then Lender, Persons authorized by Lender, or a receiver appointed by a court at Lender's request may  (A) collect the rental payments, including overdue rental payments, directly from the tenants, (B) enter upon and take possession of the Property, (C) manage the Property, and (D) sign, cancel and change rental agreements and leases. If Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 17, I agree that the tenants may make those rental payments to Lender without having to ask (i) Lender whether I have failed to keep my promises and agreements under this Security Instrument, or (ii) me for my permission to do so

If Lender acts to have the Property sold after a Breach of Duty as defined in Paragraph 28, I understand and agree that. (A) my right to occupy the Property ceases at the time the Property is sold; (B) I shall have no right to occupy the Property after such sale without the written consent of the new owner of the Property; and (C) my wrongful and unlawful possession of the Property may subject me to monetary damages, including the loss of reasonable rent and the cost of eviction. All rental payments collected by

0045892312

Lender or by a receiver, other than the rent paid by me under this Paragraph 17, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the Sums Secured. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees and the costs of any necessary bonds.

**18.    INJURY TO PROPERTY; ASSIGNMENT OF RIGHTS**

An assignment is a transfer of rights to another. I may have rights to bring legal action against persons, other than Lender, for injury or damage to the Property or in connection with the loan made to me by Lender and which arose or will arise before or after the date of this Security Instrument. These rights to bring legal action may include but are not limited to an action for breach of contract, fraud, concealment of a material fact, or for intentional or negligent acts. I assign these rights, and any and all proceeds arising from these rights, as permitted by applicable law, to Lender. Lender may, at its option, enforce these rights in its own name and may apply any proceeds resulting from this assignment to the Sum Secured and this Security Instrument after deducting any expenses, including attorneys' fees, incurred in enforcing these rights. At the request of Lender, I will sign any further assignments or other documents that may be necessary to enforce this assignment. I will notify Lender immediately if I believe I have the right to bring any such legal action against any persons, and will notify Lender immediately if I assert any claim or demand against or commence any legal action against any such person. If I receive any proceeds from any persons besides Lender in connection with any such claim, demand or legal action, I will immediately deliver such proceeds to Lender.

**19.    CLERICAL ERRORS**

In the event Lender at any time discovers that this Security Instrument, the Secured Notes or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from Lender, to execute such documentation as Lender deems necessary to correct any such error(s) and I also agree that I will not hold Lender responsible for any damage to me which may result from any such error.

**20.    LOST, STOLEN OR MUTILATED DOCUMENTS**

If any of the Loan Documents are lost, stolen, mutilated or destroyed and Lender delivers to me an indemnification in my favor, signed by Lender, then I will sign and deliver to Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

**21.    WAIVER OF STATUTE OF LIMITATIONS**

I will waive, within applicable law, the pleading of the statute of limitations as a defense to enforce this Security Instrument, including any obligations referred to in this Security Instrument or Secured Notes.

**22.    CAPTIONS**

The captions and headings at the beginning of each paragraph of this Security Instrument are for reference only and will not be used in the interpretation of any provision of this Security Instrument.

**23.    MODIFICATION**

This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

**24.    CONDOMINIUM, COOPERATIVE AND PLANNED UNIT DEVELOPMENT OBLIGATIONS**

If the Property is a unit in a condominium, cooperative or planned unit development, each of which shall be called the "Project," and I have an interest in the common elements of the Project, then Lender and I agree that

**(A)**    If an owners association or other entity, called "Owners Association," holds title to Property for the benefit or use of the Project and its members or shareholders, the Property also includes my interest in the Owners Association and the uses, proceeds and benefits of my interest.

EXHIBIT F to RJN iso
Motion to Dismiss SAC - Page 21

0045892312

**(B)** The following are called the "Constituent Documents:" (i) The declaration or any other document which created the Project, (ii) By-laws of the Owners Association; (iii) Code of regulations for the Project; (iv) Articles of incorporation, trust instrument or equivalent document which creates the Owners Association, (v) The Project's covenants, conditions and restrictions; (vi) Other equivalent documents.

I shall perform all of my obligations under the Constituent Documents, including my obligation to pay, when due, all dues and assessments If I do not pay the dues and assessments when due, Lender may, at its option, pay them I will pay to Lender any amounts which Lender advances under this Paragraph 24 according to the terms described in Paragraph 7 above

**(C)** If the Owners Association maintains, with an insurance company reasonably acceptable to Lender, a **master** or **blanket** policy on the Project which is satisfactory to Lender and which provides insurance coverage on the terms, in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," and Lender is provided with evidence of such **master** or **blanket** policy, then (i) Lender waives the provision in Paragraph 2(B) above for the payment to Lender of the estimated yearly premium installments for hazard insurance on the Property; and (ii) hazard insurance coverage on the Property as required by Paragraph 5 above is deemed to be satisfied to the extent that the required coverage is provided by the Owners Association policy. I shall give Lender prompt notice of any lapse in the required hazard insurance coverage I shall provide a copy of such **master** or **blanket** policy to Lender annually

In the event of a distribution of any hazard insurance proceeds, including without limitation any earthquake or special hazards insurance whether or not such coverage was required by Lender, in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to me are hereby assigned and shall be paid to Lender for application to the Sums Secured by this Security Instrument, with any excess paid to me If I receive any such proceeds, I will immediately deliver them to Lender or otherwise apply them as set forth above

I shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable to Lender in form, amount and extent of coverage

**(D)** I shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to (i) the abandonment or termination of the Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of condemnation, eminent domain or other governmental taking; (ii) any amendment to any provision of Constituent Documents unless the provision is for the express benefit of Lender or of lenders generally, (iii) termination of professional management and assumption of self-management of the Owners Association, or (iv) any action which would have the effect of rendering the **master** or **blanket** hazard insurance policy and/or the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

## 25.   FUTURE ADVANCES

At Borrower's request, Lender, at its option (but before release of this Security Instrument or the full reconveyance of the Property described in the Security Instrument) may lend future advances, with interest, to Borrower. Such future advances, with interest, will then be additional Sums Secured under this Security Instrument.

SD001K (2004-03-3)

CA

EXHIBIT F to RJN iso
Motion to Dismiss SAC - Page 22

0045892312

**26.    AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**

<u>Acceleration of Payment of Sums Secured.</u> Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me

**THIS SPACE INTENTIONALLY LEFT BLANK.**

**27.    SUBSTITUTION OF TRUSTEE**

I agree that Lender may at any time appoint a successor trustee and that Person shall become the Trustee under this Security Instrument as if originally named as Trustee

SD001L (2004-03-3)     [L01 (2006-08-1)]

**CA**

EXHIBIT F to RJN iso
Motion to Dismiss SAC - Page 23

0045892312

**28.    RIGHTS OF THE LENDER IF THERE IS A BREACH OF DUTY**

It will be called a "Breach of Duty" if (i) I do not pay the full amount of each regularly scheduled payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under the Note or this Security Instrument, or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts; or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading  If there is a Breach of Duty by me, Lender may demand an immediate payment of all sums secured

If there is a Breach of Duty by me, Lender may exercise the power of sale, take action to have the Property sold under applicable law, and invoke such other remedies as may be permitted under any applicable law

Lender does not have to give me notice of a Breach of Duty  If Lender does not make a demand for full payment of the Sums Secured upon a Breach of Duty, Lender may make a demand for full payment of the Sums Secured upon any other Breach of Duty

If there is a Breach of Duty, Lender may also take action to have a receiver appointed to collect rents from any tenants on the Property and to manage the Property. The action to appoint a receiver may be taken without prior notice to me and regardless of the value of the Property

The sale of the Property may be postponed by or at the direction of Lender  If the Property is sold, I agree that it may be sold in one parcel  I also agree that Lender may add to the amount that I owe to Lender all legal fees, costs, allowances, and disbursements incurred as a result of the action to sell the Property

Lender will apply the proceeds from the sale of the Property in the following order. (A) to all fees, expenses and costs incurred in connection with the sale, including but not limited to trustees' and attorneys' fees, if any, (B) to all Sums Secured by this Security Instrument, and (C) any excess to the Person or Persons legally entitled to it.

**29.    RECONVEYANCE**

Upon payment of all Sums Secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all Secured Notes to Trustee. Trustee shall reconvey the Property without warranty to Borrower. Lender may charge Borrower a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (including the Trustee) for services rendered and the charging of the fee is permitted, whether expressly or by lack of express prohibition, under applicable law  If the fee charged does not exceed any maximum fee set by applicable law, the fee is conclusively presumed to be reasonable

**30.    STATEMENT OF OBLIGATION**

Lender may collect a fee of $60.00, or such greater maximum amount as may from time to time be allowed by law, for furnishing any statement of obligation with respect to this Security Instrument or the Secured Notes

EXHIBIT F to RJN iso
Motion to Dismiss SAC - Page 24

0045892312

**31.    ( X )   QUICK QUALIFYING LOAN PROGRAM**

I have qualified for this loan by making statements of fact which were relied upon by Lender to approve the loan rapidly  This loan is called a "Quick Qualifying Loan " I have stated and I confirm that: (A) I do not have any other Quick Qualifying Loans with Lender; (B) I have agreed to not further encumber the Property and do not intend to further encumber the Property for at least six months after the date of the Secured Notes and this Security Instrument, and (C) If I am purchasing the Property, all of the terms of the purchase agreement submitted to Lender are true and the entire down payment is cash from my own funds.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument  If I am in such default, Lender may, at its option, increase the interest rate.

**32.    ( X )   OWNER OCCUPANCY**

Lender has relied upon statements of fact which I have made to qualify for this loan  I have stated and confirm that  (A) the Property is my personal and primary residence, (B) I will occupy the Property not later than 30 days after this Security Instrument is recorded, and (C) I will use the Property as my residence for at least 12 months from the date this Security Instrument is recorded

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument  If I am in such default, Lender may, at its option, increase the interest rate.

**( X )   VALUE INDICATES THAT THE PARAGRAPH APPLIES.**

**THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.**

CA

EXHIBIT F to RJN iso
Motion to Dismiss SAC - Page 25

0045892312

**BY SIGNING BELOW,** I accept and agree to the promises and agreements contained in this Security Instrument and in any rider(s) signed by me and recorded in proper official records

**(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)**

**BORROWER(S):**

_Rosemary Greene_ _____    (Seal)
ROSEMARY GREENE

**ATTACH INDIVIDUAL NOTARY ACKNOWLEDGEMENT**

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of _Alameda_ } ss.

On _25 Apr./2007_, before me, _D.L.Manuel-Miller, Notary Public_
Date                                 Name and Title of Officer (e.g. "Jane Doe, Notary Public")

personally appeared _Rosemarie Greene_
Name(s) of Signer(s)

☐ personally known to me

☐ proved to me on the basis of satisfactory evidence
to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the
entity upon behalf of which the person(s) acted,
executed the instrument

[Notary Seal:]
D. L. MANUEL-MILLER
Commission # 1596256
Notary Public - California
Alameda County
My Comm. Expires Jul 30, 2009

_D.L. Manuel-Miller_
_1596256_
_Alameda_
_Jul 30, 2009_

Place Notary Seal Above

WITNESS my hand and official seal

_D. L. Manuel Miller_
Signature of Notary Public

─────────────── **OPTIONAL** ───────────────

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document*

## Description of Attached Document

Title or Type of Document _Deed of Trust_

Document Date _April 25, 2007_    Number of Pages _16_

Signer(s) Other Than Named Above _N.A._

## Capacity(ies) Claimed by Signer(s)

| Signer's Name _____ | Signer's Name: _____ |
|---|---|
| ☐ Individual | ☐ Individual |
| ☐ Corporate Officer — Title(s) _____ | ☐ Corporate Officer — Title(s) _____ |
| ☐ Partner — ☐ Limited ☐ General | ☐ Partner — ☐ Limited ☐ General |
| ☐ Attorney in Fact | ☐ Attorney in Fact |
| ☐ Trustee | ☐ Trustee |
| ☐ Guardian or Conservator | ☐ Guardian or Conservator |
| ☐ Other _____ | ☐ Other _____ |
| Signer Is Representing _____ | Signer Is Representing _____ |

RIGHT THUMBPRINT OF SIGNER — Top of thumb here

© 2004 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402    Item No. 5907    Reorder: Call Toll-Free 1-800-876-6827

Title No. 07-**59012459**
Locate No. CACTI7701-7738-2353-0059012459

## LEGAL DESCRIPTION

### EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF OAKLAND, COUNTY OF ALAMEDA, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 161, TRACT 2429, FILED APRIL 20, 1904, MAP BOOK 48, PAGE 50, ALAMEDA COUNTY RECORDS.

APN: 043A-4662-081-00

Prepped
MAY 2 4 2007
Nicole White

2

CLTA Preliminary Report Form - Modified (11/17/06)

EXHIBIT G

Recording requested by:
**LSI Title Company**

When Recorded Mail To:
**NDEx West, L.L.C.**
**15000 Surveyor Boulevard, Suite 500**
**Addison, Texas 75001-9013**

APN #: 043A-4662-081
Property Address:
**8000 HANSOM DR**
**OAKLAND, CALIFORNIA 94605**


DFF20130015000141



2013291908       08/28/2013 09:47 AM
OFFICIAL RECORDS OF ALAMEDA COUNTY
PATRICK O'CONNELL
RECORDING FEE:       34.00

4    PGS

*Space above this line for Recorder's use only*

Trustee Sale No. :  **20130015000141**       Title Order No.:  **130010621**

## IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER
## DEED OF TRUST

<u>ATTENTION RECORDER:</u> THE FOLLOWING REFERENCE TO AN ATTACHED SUMMARY APPLIES ONLY TO COPIES PROVIDED TO THE TRUSTOR, NOT TO THIS RECORDED ORIGINAL NOTICE.

### NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
**NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO**
**TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP**
**LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY**

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this Notice of Default may be recorded (which date of recordation appears on this notice).

This amount is $144,162.76 as of 08/26/2013 and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

FCUS_NoticeOfDefault.rpt - Record - (05/1/2013) - Ver-40                                                    Page 1 of 3

*See Attached Declaration*

EXHIBIT G to RJN iso
Motion to Dismiss SAC - Page 29

**IMPORTANT NOTICE**
**NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST**

Trustee Sale No. : 20130015000141      Title Order No.: 130010621

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things. (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**WELLS FARGO HOME MORTGAGE, A DIVISION OF WELLS FARGO BANK, N.A.**
c/o NDEx West, L.L.C.
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013
(866) 795-1852

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.
Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

## REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN THAT: NDEx West, L.L.C. is the original Trustee, duly appointed Substituted Trustee, or acting as Agent for the Trustee or Beneficiary under a Deed of Trust dated 04/25/2007, executed by ROSEMARY GREENE, as Trustor, to secure obligations in favor of WORLD SAVINGS BANK, FSB, as Beneficiary Recorded on 04/30/2007 as Instrument No. 2007167560 of official records in the Office of the Recorder of ALAMEDA County, California, as more fully described on said Deed of Trust. Including a Note(s)/ Unconditional Guaranty which had a principal amount of $661,600.00 that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the Beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of:

EXHIBIT G to RJN iso
Motion to Dismiss SAC - Page 30

**IMPORTANT NOTICE**
NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

Trustee Sale No. : 20130015000141          Title Order No.: 130010621

THE INSTALLMENT OF PRINCIPAL AND INTEREST WHICH BECAME DUE ON 12/1/2009 AND ALL SUBSEQUENT INSTALLMENTS, TOGETHER WITH LATE CHARGES AS SET FORTH IN SAID NOTE AND DEED OF TRUST, ADVANCES, ASSESSMENTS, FEES, AND/OR TRUSTEE FEES, IF ANY.

NOTHING IN THIS NOTICE SHALL BE CONSTRUED AS A WAIVER OF ANY FEES OWING TO THE BENEFICIARY UNDER THE DEED OF TRUST, PURSUANT TO THE TERMS OF THE LOAN DOCUMENTS.

That by reason thereof, the present beneficiary under said Deed of Trust and/or its loan servicer hereby declare(s) all obligations secured thereby immediately due and payable, invoke(s) the power of sale under said Deed of Trust, and elect(s) to sell the property described therein in satisfaction of those obligations without prejudice to any other default remedies permitted by applicable law.

DATED: 08/26/2013

NDEx West, L.L.C. as Trustee for Beneficiary

By: _____

Meriel Lee. Associate Attorney

FCUS_NoticeOfDefault.rpt - Record - (05/1/2013) - Ver-40                    **Page 3 of 3**

EXHIBIT G to RJN iso
Motion to Dismiss SAC - Page 31

# DECLARATION OF COMPLIANCE

*(California Civil Code Section 2923.55(c))*

Wells Fargo Bank, N.A.
3476 Stateview Blvd.
Fort Mill, SC 29715

Borrower(s):  ROSEMARY GREENE

Property Address:  8000 HANSOM DR
OAKLAND CA 94605

The undersigned, as an authorized agent or employee of the mortgage servicer named below, declares that:

1. ☒ The mortgage servicer has contacted the borrower pursuant to California Civil Code §2923.55(b)(2) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure". Thirty (30) days, or more, have passed since the initial contact was made.

2. ☐ The mortgage servicer has exercised due diligence to contact the borrower pursuant to California Civil Code §2923.55(f) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure". Thirty (30) days, or more, have passed since these due diligence efforts were satisfied.

3. ☐ No contact was required by the mortgage servicer because the individual(s) identified above did not meet the definition of "borrower" pursuant to subdivision (c) of California Civil Code §2920.5.

4. ☐ The requirements of California Civil Code §2923.55 do not apply because the loan is not secured by a first lien mortgage or deed of trust on "owner-occupied" residential real property as defined by California Civil Code §2924.15(a).

I certify that this declaration is accurate, complete and supported by competent and reliable evidence which the mortgage servicer has reviewed to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

|  | **Wells Fargo Bank, N.A.** |
|---|---|
| By: | |
| Name: | Christopher Smith |
| Title: | VP of Loan Documentation |
| Date: | 8/23/2013 |

053_CA_V3

EXHIBIT H



**11316991**

1  Joel M. Feinstein, Esq. SBN: 177546
   *jfeinstein@joelfeinsteinlaw.com*
2  Chris T. Nguyen, Esq. SBN: 259922
   *chris.nguyen@joelfeinsteinlaw.com*
3  Law Offices of Joel M. Feinstein, APC
4  2021 Business Center Drive, Suite 213
   Irvine, CA 92612
5  Tel.: (949) 419-8912
6  Fax: (888) 900-5155

7  Attorney for Plaintiff, Rosemary Greene

**FILED**
ALAMEDA COUNTY
MAY 1 4 2013
CLERK OF THE SUPERIOR COURT
v. _____
                              Deputy

8            SUPERIOR COURT OF THE STATE OF CALIFORNIA

9       COUNTY OF ALAMEDA – OAKLAND – RENEE C. DAVIDSON COURTHOUSE

10

11  ROSEMARY GREENE,                    Case No.: RG - 13 - 6 7 9 5 3 7

12              Plaintiff,              **COMPLAINT FOR:**

13  v.                                  1.  VIOLATIONS OF § 2923.5;
                                        2.  BREACH OF THE IMPLIED COVENANT
14                                          OF GOOD FAITH AND FAIR DEALING;
    WELLS FARGO HOME MORTGAGE, a        3.  NEGLIGENCE;
15  Division of WELLS FARGO BANK, N.A.; 4.  VIOLATIONS OF B&P CODE § 17200; and
    ETS SERVICES, LLC; and DOES 1 – 10, 5.  NEGLIGENT INFLICTION OF
16  inclusive,                              EMOTIONAL DISTRESS.

17              Defendants.             **PLAINTIFF DEMAND A JURY TRIAL**
18

19

20      Plaintiff, Rosemary Greene, by and through her counsel, complains and for causes of action

21  alleges as follows:

22                                      **PARTIES**

23      1.    Plaintiff, Rosemary Greene ("Plaintiff") is and at all relevant times mentioned herein, a

24  resident of Alameda County, California, residing at **8000 Hansom Drive, Oakland, California 94605**

25  ("subject property").

26  \\\

27  \\\

28  \\\

_____

                                        1

GREENE v. WELLS FARGO HOME MORTGAGE. et. al. - PLAINTIFF'S VERIFIED FIRST AMENDED COMPLAINT

*(left margin, vertical)* LAW OFFICES OF JOEL M. FEINSTEIN, APC
2021 Business Center Drive, Suite 213, Irvine, CA 92612 Tel: (949) 419-8912 Fax: (888) 900-5155

*(left margin, vertical)* ORIGINAL

*(right margin, vertical)* FILED BY FAX

EXHIBIT H to RJN iso
Motion to Dismiss SAC - Page 33

2.     Plaintiff is informed and believes and upon that basis alleges Defendant, WELLS FARGO HOME MORTGAGE, a Division of WELLS FARGO BANK, N.A. (hereinafter "Wells Fargo") is a national association with its principal place of business in North Carolina. Wells Fargo is, and at all times mentioned herein was, conducting business in the County of Alameda, California.

3.     Plaintiff is informed and believes and upon that basis alleges, Defendant ETS SERVICES, LLC (hereinafter "ETS"), is a Delaware Limited Liability Company with principal place of business in Minnesota. ETS is registered with the California Secretary of State with its Registered Agent for service being CSC Lawyers Incorporating Service located at 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California 95833. ETS is, and at all times mentioned herein was, conducting business in the County of Alameda, California.

4.     Plaintiff is ignorant of the true names and capacities of Defendants, DOES 1 – 10, inclusive ("DOES"), and therefore sue them by fictitious names. Plaintiff will amend her complaint to allege DOES's true names and capacities when they are ascertained.

5.     Plaintiff is informed and believes and upon that basis alleges that DOE Defendants claim some right, title, estate, lien, or interest in the subject property, adverse to Plaintiff's own title. Each of these claims constitutes a cloud on Plaintiff's title to the subject property from which Plaintiff seeks relief.

6.     Plaintiff is informed and believes and upon their basis allege that DOE Defendants are contractually, strictly, negligently, intentionally, or vicariously liable, and/or otherwise legally responsible in some manner for each and every act, omission, obligation, event, or happening set forth in their complaint, and that DOE Defendants are indebted to Plaintiff as hereinafter alleged.

**JURISDICTION AND VENUE**

7.     The subject property of their controversy is located in Alameda County, California.

8.     The wrongful acts alleged herein occurred in Alameda County, California.

9.     The court has jurisdiction over the parties. Plaintiff is a resident of Alameda County, California. All Defendants regularly engage in business within Alameda County, California.

10.    Venue is proper in their Court.

\\\

2

GREENE v. WELLS FARGO HOME MORTGAGE. et. al. - PLAINTIFF'S VERIFIED FIRST AMENDED COMPLAINT

## GENERAL AND FACTUAL ALLEGATIONS

11. On or about April 25, 2007, Plaintiff executed a deed of trust against the subject property as security for a loan of $661,600.00 from World Savings Bank, FSB ("World"). A deed of trust executed (See Exhibit A).

12. Subsequently, Plaintiff suffered severe economic hardship in 2009 due to the recession especially hitting the real estate market hard as she is a Realtor. Plaintiff struggled with the mortgage payments at matter.

13. Plaintiff immediately contacted Wachovia Mortgage who was the servicer of the mortgage account, for loss mitigation assistance when unable to keep up her mortgage payments. Wachovia Mortgage essentially "put a Band-Aid on a severed artery" in a loan modification that just perpetuated the problem in that it just continued the non-amortized provisions of the original loan and contained adjustable rate clauses that just set Plaintiff up to fail again in the future.

14. Subsequently, during episodes of severe anxiety and depression, Plaintiff learned that she suffers from Delayed On-Set Post Traumatic Stress Disorder as a result of her service in the United States military. Plaintiff has suffered debilitating symptoms of anxiety since 1960. Plaintiff's symptoms caused her further economic hardship and she then contacted Defendant, Wells Fargo for loss mitigation assistance.

15. Defendant Wells Fargo's agents instructed Plaintiff to submit a loan modification application. Plaintiff complied with Defendants' instructions to submit a completed application and also applied for the Home Affordable Unemployment Program. Defendants then began requesting for updates of the same documents a multitude of times. Plaintiff would still comply with the document requests each and every time over the span of from 2010 to 2013. Defendants delayed the process for a significant duration of time instead of providing immediate assistance to assist Plaintiff in mitigating losses. Instead, the delay allowed interest, late charges and penalties to continuously accrue and the loan balance increased. Finally, Defendants denied Plaintiff's application for a loan modification alleging that Plaintiff had insufficient documents although all requests to submit documents were met. Plaintiff was instructed to submit a new application.

\\\

---

3

GREENE v. WELLS FARGO HOME MORTGAGE. et. al. - PLAINTIFF'S VERIFIED FIRST AMENDED COMPLAINT



16.     It was not until recently that Plaintiff received a denial based on alleged reasons that the amortized amount of the amount due could not fit the 31% of gross income guideline provided under HAMP. This review that took close to three (3) years to complete due to Defendant WELLS FARGO's delays.

17.     It is certain that Defendants employed a scheme to unnecessarily delay the process for loss mitigation. Defendants' conduct, lack of communication and constant undue delay by requesting the same documents was no more than a systematic ploy to prevent Plaintiff from mitigating losses and instead incurring additional costs, fees, charges and inevitably face foreclosure proceedings.

18.     All inquiries to date were always initiated by Plaintiff. No information or discussion was facilitated by Defendants to explore other foreclosure alternatives. Instead, Defendants' only communications with Plaintiff were to submit for a loan modification and absurd requests to be provided the same documents a multitude of times and notice of their pursuit of foreclosure.

19.     Defendant then sent letters regarding short sale and began to send real estate agents to inspect the property as it had mistakenly marked Plaintiff's file for a short sale. Although Plaintiff had never once requested or conveyed interest in a short sale. Defendant WELLS FARGO is clearly mishandling the servicing of this account and assistance for loss mitigation.

20.     Defendants conduct impeded Plaintiff's ability mitigate losses and forced her to exhaust her resources and face inevitable foreclosure. It is unknown whether any review on the merit ever took place.

### FIRST CAUSE OF ACTION

### Violations of § CA Civil Code § 2923.5

### (Against All Defendants)

21.     Plaintiff re-alleges and incorporates all preceding paragraphs as though set forth fully herein.

22.     Plaintiff alleges Defendants are tortuously foreclosing on the subject property.

23.     Defendants owed a duty under Civil Code §§ 2924, *et seq.*, to ensure properly that they were trustees, mortgagees, beneficiaries, or agents authorized to foreclose non-judicially.

24.     Defendants violated their duty as discussed above.

---

4

GREENE v. WELLS FARGO HOME MORTGAGE. et. al. - PLAINTIFF'S VERIFIED FIRST AMENDED COMPLAINT

25.     Defendants also owed Plaintiff a duty under Civ. Code § 2923.5 to contact Plaintiff in order to assess her financial situation and explore options to avoid foreclosure; to advise Plaintiff of her right to request a meeting with Defendants within 14 days; and to provide Plaintiff the toll-free telephone number made available by the Department of Housing and Urban Development for housing counseling.

26.     Plaintiff requested a meeting and said meeting never took place.

27.     Defendants violated their duty by not performing accordingly with §2923.5 and therefore failing to communicate and explore appropriate options available.

28.     Defendants have purposefully delayed truthful communication to the last minute to discuss any such available loss mitigation options with Plaintiff before proceeding with formal foreclosure process by filing a notice of default. Defendants systematically employed such tactics so that Plaintiff would incur additional late fees, penalties, charges related to foreclosure to increase the amount due and owing. Their tactic was not only profitable at Plaintiff's expense, but increased the risk of an incurable default.

29.     Plaintiff is at risk of two types of incurable defaults: 1.) Plaintiff was already struggling with payments when she sought assistance with Defendants. However, the undue delay merely to increase the amount owed increased Plaintiff's financial burden unnecessarily; and 2.) The additional amounts owed are used as an excuse by Defendants that the balance would exceed parameters for any type of modification or forbearance.

30.     None of Defendants' actions comply with the spirit and purpose of Ca. Civ. Code §2923.5.

31.     Plaintiff has been harmed by Defendants violations.

## SECOND CAUSE OF ACTION

### Breach of the Implied Covenant of Good Faith and Fair Dealing

### (Against All Defendants)

32.     Plaintiff re-alleges and incorporates all preceding paragraphs as though set forth fully herein.

\\\

5

GREENE v. WELLS FARGO HOME MORTGAGE. et. al. - PLAINTIFF'S VERIFIED FIRST AMENDED COMPLAINT



33.    Plaintiff alleges Defendants breached both the express terms of, and the implied covenant of good faith and fair dealing in, the loan contract.

34.    Plaintiff and WELLS FARGO entered into a loan contract.

35.    The loan contract is comprised of the promissory note and deed of trust.

36.    The deed of trust states, "Their Security Instrument and the Secured Notes shall be governed by and construed under...the law of the jurisdiction in which the Property is located." (Exhibit A.)

37.    Defendants breached the implied covenant of good faith and fair dealing implicit within it. Their covenant encompasses any promises which a reasonable person in Plaintiff's position would justifiably understand were included within the loan contract. Loan modification and refinancing were two such promises.

38.    Plaintiff's loan contemplated modifications, as specified in the deed of trust; indeed, it stated: "Their Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions, and modifications of the Note...." (Exhibit A.)

39.    Accordingly, Plaintiff requested loss mitigation assistance from Defendants on multiple occasions.

40.    Plaintiff submitted to Defendants all the necessary documentation required for review.

41.    Defendants unfairly denied Plaintiff a loan modification and thus interfered with her right to receive the benefits bargained for such under her loan contract. Defendants gave no intelligible reason for their denial, simply stating that Plaintiff were ineligible. Plaintiff could not therefore correct her ineligibility to qualify for assistance. Defendants remained purposefully vague in order to drive Plaintiff into foreclosure.

42.    Defendants' conduct harmed Plaintiff. Plaintiff has fallen behind on her loan.

43.    As stated in Plaintiff's first cause of action, the same conduct of not properly communicating with Plaintiff is a breach of the implied covenant of good faith and fair dealing.

44.    Accordingly, Plaintiff applied multiple times for loss mitigation or loan modification after her financial circumstances changed.

\\\

6

GREENE v. WELLS FARGO HOME MORTGAGE. et. al. - PLAINTIFF'S VERIFIED FIRST AMENDED COMPLAINT

45.     Plaintiff submitted to Defendants all the necessary documentation required for loss mitigation review.

46.     However, Defendants failed to review the requests on the merits. Defendants' denials were allegedly based on "insufficient documents." Such denial is absurd as all document requests were complied with. The documents that were allegedly insufficient and requested a multitude of times were never itemized nor detailed but instead continuously requested by letter. Plaintiff's specialist would be unreachable to provide her clarifications and confirmations.

47.     Defendants unfairly denied Plaintiff a loan modification and thus interfered with her right to receive the benefits bargained for under her loan contract. Defendants gave no intelligible details for her denial. Plaintiff could not therefore correct her ineligibility to qualify for assistance. Defendants remained purposefully vague in order to drive Plaintiff into inevitable and incurable foreclosure.

48.     Defendants' conduct harmed Plaintiff. Plaintiff defaulted on her loan and was forced to exhaust her savings and resources in order to save the subject property from foreclosure.

49.     Plaintiff has incurred unnecessary monetary costs by being impeded from mitigating her losses.

50.     Plaintiff therefore demands damages in an amount to be determined at trial and for the foreclosure sale of her home to be enjoined.

### THIRD CAUSE OF ACTION

### Negligence

### (Against All Defendants)

51.     Plaintiff re-alleges and incorporates all preceding paragraphs as though set forth fully herein.

52.     Plaintiff alleges Defendants were negligent in reviewing her modification application(s).

53.     Defendants owed Plaintiff a duty of care in reviewing Plaintiff's loan for assistance.

\\\
\\\
\\\

7

GREENE v. WELLS FARGO HOME MORTGAGE. et. al. - PLAINTIFF'S VERIFIED FIRST AMENDED COMPLAINT

54.     While a financial institution typically owes no duty of care to a borrower, once lenders voluntarily offer to undertake, and in fact do undertake, the task of reviewing a borrower's loan for a loan workout pursuant to the objective guidelines, it is undisputed that they must do so with ordinary care and in good faith, and they must not leave the borrower in a worse position than they found him/her before offering to undertake, and in fact undertaking, the task.

55.     Further, pursuant to an Office of the Comptroller of the Currency and Office of Thrift Supervision consent order dated·April 13, 2011, Defendants have a duty "to ensure that, before any foreclosure sale occurs, a final decision regarding a borrower's loan modification request (either on a trial or permanent basis) is communicated in writing to the borrower within a reasonable period and explains the reasons why the borrower did not qualify for the trial or permanent modification." (http://www.occ.treas.gov/news-issuances/news-releases/2011/nr-occ-2011-139a.pdf.)

56.     Defendants breached their duty of ordinary care and good faith to Plaintiff, their duty not to put Plaintiff in a worse position than when they found her, and the terms of the Consent Order when they:

     a.  Failed to give Plaintiff a fair review for loss mitigation assistance despite the fact that Plaintiff performed every term required for modification;

     b.  Rejected Plaintiff's loan workout for a reason which is unintelligible;

     c.  Rejected Plaintiff's loan workout for a reason other than the only two reasons for which it could legitimately have been rejected (*i.e.*, either Plaintiff did not perform according to the terms for applying for loss mitigation assistance or Plaintiff were ineligible for a loan workout pursuant to the objective guidelines of loss mitigation). Plaintiff's loan workout could not have been rejected for a legitimate reason because Plaintiff performed all terms necessary for a successful loss mitigation application and was eligible for loss mitigation under its objective guidelines;

     d.  Failed to help Plaintiff evaluate other options to keep her in her home pursuant to their promise to do so and according to California law; and

\\\

8

GREENE v. WELLS FARGO HOME MORTGAGE. et. al. - PLAINTIFF'S VERIFIED FIRST AMENDED COMPLAINT

e. Caused Plaintiff to default by rejecting her loss mitigation application improperly.

57. Defendants' breaches are the actual and proximate cause of Plaintiff's damages because, but for Defendants' breaches, Plaintiff's loan would have been modified, their arrearages would not have been capitalized, their loan would have become current, and their monthly payments would have been decreased, thereby avoiding foreclosure.

58. Plaintiff suffered damages in that she now faces the imminent loss of her home to foreclosure, and the imminent risk of subsequent eviction.

59. Plaintiff therefore demands damages in an amount to be determined at trial and for the foreclosure sale of her home to be enjoined.

## FOURTH CAUSE OF ACTION

### Violations of § B&P Code 17200

### (Against All Defendants)

60. Plaintiff re-alleges and incorporates all preceding paragraphs as though set forth fully herein.

61. Plaintiff alleges Defendants violated Bus. & Prof. Code §§ 17200, *et seq.*, by engaging in unlawful and fraudulent business practices.

62. Defendants violated the "unfair," "unlawful," and "fraudulent" prongs of the UCL when they:

a. Ignored Plaintiff's communications and failed to communicate with Plaintiff regarding the financial distress regarding mortgage loan repayment;

b. Purposely conducted itself in a manner to expose Plaintiff to incurring additional unnecessary fees, charges, penalties and imminent foreclosure costs that have increased the balance owed and balance to cure default and continues to unnecessarily increase;

c. Purposely avoided Civ. Code § 2923.5 requirements to cause unnecessary costs to Plaintiff's account;

\\\

9

GREENE v. WELLS FARGO HOME MORTGAGE. et. al. - PLAINTIFF'S VERIFIED FIRST AMENDED COMPLAINT

d. Purposely delayed the loan modification process in order to place Plaintiff into formal foreclosure process and move forward with a trustee's sale while making Plaintiff believe she was being fairly reviewed;

e. Failed to give Plaintiff a fair review for loss mitigation assistance despite the fact that Plaintiff performed every term required for modification;

f. Rejected Plaintiff's loan workout for a reason which is unintelligible;

g. Rejected Plaintiff's loan workout for a reason other than the only two reasons for which it could legitimately have been rejected (*i.e.*, either Plaintiff did not perform according to the terms for applying for loss mitigation assistance or Plaintiff was ineligible for a loan workout pursuant to the objective guidelines of loss mitigation). Plaintiff's loan workout could not have been rejected for a legitimate reason because Plaintiff performed all terms necessary for a successful loss mitigation application and was eligible for loss mitigation under its objective guidelines;

h. Failed to help Plaintiff evaluate other options to keep her in her home pursuant to their promise to do so and according to California law; and

i. Caused Plaintiff to default by rejecting her loss mitigation application improperly.

63.    Defendants' conduct violated the "unfair" prong of the UCL because its utility is significantly outweighed by the gravity of the harm that it imposes on borrowers. Defendants have alternatives to their conduct that would be less harmful to borrowers that they do not employ because their present conduct is more profitable and beneficial to themselves than these alternatives.

64.    In addition their conduct violates the "unfair" prong because the practice is oppressive, unscrupulous, and/or substantially injurious to borrowers.

65.    As a direct and proximate result of defendants' unfair and deceptive business practices, Plaintiff, Defendants' other borrowers and the public in general have been injured.

\\\

\\\

10

GREENE v. WELLS FARGO HOME MORTGAGE. et. al. - PLAINTIFF'S VERIFIED FIRST AMENDED COMPLAINT

66.   The unlawful, unfair and fraudulent business practices of defendants described herein present a continuing threat to Plaintiff, Defendants' other borrowers, and the public in general, in that Defendants persist and continue to engage in these practices, and will not cease doing so unless and until forced to do so by the Court. Defendants' conduct is causing and will continue to cause irreparable injury to Plaintiff, Defendant's other borrowers, and the public in general unless enjoined or restrained.

## FIFTH CAUSE OF ACTION

### Negligent Infliction of Emotional Distress

### (Against All Defendants)

67.   Plaintiffs re-allege and incorporate all preceding paragraphs as though set forth fully herein.

68.   Plaintiffs allege Defendants negligently inflicted emotional distress upon them.

69.   Defendants have committed negligence and breached the loan contract, thereby threatening to foreclose on Plaintiffs' home wrongfully.

70.   Plaintiffs have directly suffered serious emotional distress in response. Potential foreclosure is a harrowing experience.

71.   Plaintiffs demand an award of damages for all their distresses suffered, in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.   That the Court holds Plaintiff due a modification.

2.   That the Court enjoins any foreclosure currently pending on the subject property.

3.   That the Court to declare the rights, duties and interests of the respective parties as regards Plaintiff's loan contract.

4.   That the Court holds Defendants liable for their various violations stated above, that Plaintiff therefore be awarded all damages sustained, in an amount to be proven at trial; including an award for past and future economic and compensatory damages, past and future non-economic and special damages, punitive and/or exemplary damages, and other damages.

\\\

11

GREENE v. WELLS FARGO HOME MORTGAGE. et. al. - PLAINTIFF'S VERIFIED FIRST AMENDED COMPLAINT

5.  That the Court awards Plaintiff reasonable attorney's fees, reasonable costs of suit incurred, and any other relief as it may deem just and proper.

DATED: May 10, 2013                    LAW OFFICES OF JOEL M. FEINSTEIN, APC


                                        BY: _____
                                            CHRIS T. NGUYEN, ESQ.
                                            Attorney for Plaintiff, Rosemary Greene

12

GREENE v. WELLS FARGO HOME MORTGAGE. et. al. - PLAINTIFF'S VERIFIED FIRST AMENDED COMPLAINT

**AFFIDAVIT AND VERIFICATION**
(CCP § 2015.5 and §466)

STATE OF CALIFORNIA )
                              ) ss
COUNTY OF ALAMEDA )

I, Rosemary Greene, Plaintiff in the above-entitled action against Defendants, WELLS FARGO

HOME MORTGAGE, a Division of WELLS FARGO BANK, N.A.; ETS SERVICES, LLC; and

DOES 1 – 10, inclusive, have read the foregoing verified complaint and know the contents thereof.

I certify that the same is true to the best of our knowledge, information, and belief, formed after

an inquiry reasonable under the circumstances.

The lawsuit is not being presented primarily for an improper purpose, such as to harass or to

cause unnecessary delay or needless increase in the cost of litigation.

The claims, defenses, and other legal contentions therein are warranted by existing law, or by a

non-frivolous argument for the extension, modification or reversal of existing law, or the establishment

of new law.

The allegations and other factual contentions have evidentiary support or, if specifically so

identified, are likely to have evidentiary support after a reasonable opportunity for further investigation

or discovery.

The denials of factual contentions are warranted on the evidence or, if specifically so identified,

are reasonably based on a lack of information or belief.

I declare under penalty of perjury under the laws of the State of California that the foregoing is

true and correct.

DATED: April 30, 2013                          _Rosemary Greene_
                                                                   Rosemary Greene

---

13

GREENE v. WELLS FARGO HOME MORTGAGE. et. al. - PLAINTIFF'S VERIFIED FIRST AMENDED COMPLAINT

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003. All rights reserved.

RECORDING REQUESTED BY:
WORLD SAVINGS BANK

TO : 5901245q

WHEN RECORDED MAIL TO:
WORLD SAVINGS BANK
FINAL DOCUMENTATION
CLOSING DEPARTMENT
P.O. BOX 659548
SAN ANTONIO, TX 78265-9548

LOAN NUMBER: 0045892312

NOTE AMOUNT: $661,600.00

APN : 043A- 4662-081-00    17/oa

RECORDING REQUESTED BY
CHICAGO TITLE COMPANY

2007167560   04/30/2007 08:30 AM
COUNTY OF ALAMEDA CALIFORNIA
OFFICIAL RECORDS OF ALAMEDA COUNTY
PATRICK O'CONNELL
RECORDING FEE:      58.00

17  PGS

FOR RECORDER'S USE ONLY

## DEED OF TRUST

THIS IS A FIRST DEED OF TRUST WHICH SECURES A NOTE WHICH CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY PAYMENT AMOUNT AND PRINCIPAL BALANCE (INCLUDING FUTURE ADVANCES AND DEFERRED INTEREST). AT LENDER'S OPTION THE SECURED NOTE MAY BE RENEWED OR RENEGOTIATED.

THE MAXIMUM AGGREGATE PRINCIPAL BALANCE SECURED BY THIS DEED OF TRUST IS $827,000.00 WHICH IS 125% OF THE ORIGINAL PRINCIPAL NOTE AMOUNT.

I.      **DEFINITIONS OF WORDS USED IN THIS DEED OF TRUST**
     **(A)  Security Instrument.** This Deed of Trust, which is dated **April 25, 2007,** will be called the "Security Instrument."

     **(B)  Borrower.  ROSEMARY GREENE, AN UNMARRIED WOMAN** sometimes will be called "Borrower" and sometimes simply "I" or "me."

     **(C)  Lender.** WORLD SAVINGS BANK, FSB,  ITS SUCCESSORS AND/OR ASSIGNEES, will be called "Lender." Lender is **a FEDERAL SAVINGS BANK,** which is organized and exists under the laws of the United States. Lender's address is  **1901 Harrison Street, Oakland, CA 94612** .

SD001A (2004-03-3)                                                          CA
DEFERRED INTEREST                           Page 1

0  0  3

LENDER'S USE ONLY

5901245q

Document provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003. All rights reserved.

0045892312

(D)  **Note**. The note signed by Borrower and having the same date as this Security Instrument, including all extensions, renewals, substitutions and modifications thereof, will be called the "Note." The Note shows that I owe Lender the original principal amount of U.S.  **$661,600.00**, plus accrued and deferred interest and such other amounts as stated in the Note. I have promised to pay this debt in regularly scheduled periodic payments as provided in the Note and to pay the debt in full by May **1, 2037** ("Maturity Date").

(E)  **Property**. The property that is described below in Section III entitled "Description of the Property" will be called the "Property."

(F)  **Sums Secured**. The amounts described below in Section II entitled "Borrower's Transfer of Rights in the Property" sometimes will be called the "Sums Secured."

(G)  **Person**. Any person, organization, governmental authority or other party will be called "Person."

(H)  **Trustor, Beneficiary, Trustee**.  Borrower is the "Trustor," Lender is the "Beneficiary" and **Golden West Savings Association Service Co., A California Corporation** is the "Trustee."

II.     **BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY**

I irrevocably grant and convey the Property to the Trustee, in trust for Lender, with a power of sale subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender and Trustee those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who are beneficiaries of a deed of trust and to trustees of a deed of trust. I am giving Lender and Trustee these rights to protect Lender from possible losses that might result if I fail to:

(i)     pay all amounts owed to Lender under the Note and all other notes secured by this Security Instrument, called the "Secured Notes," including future advances made by Lender and any changes to the Secured Notes made with the written consent of Lender;

(ii)    pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 below to protect the value of the Property and Lender's rights in the Property; and

(iii)   keep all of my other promises and agreements under this Security Instrument, the Secured Notes and any changes to the Secured Notes made with the written consent of Lender.

III.    **DESCRIPTION OF THE PROPERTY**

I give Trustee rights in the Property described below:

(i)     The Property which is located at **8000 HANSOM DR, OAKLAND, CA  94605-4209**. The legal description of the Property is attached as Exhibit "A" which is made a part of this Security Instrument. This Property is called the "Described Property."

(ii)    All buildings and other improvements that are located on the Described Property;

SD001B (2004-03-3)
DEFERRED INTEREST                          Page 2                                   CA

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

0045892312

(iii)    All rights in other property that I have as owner of the Described Property. These rights are known as easements, rights and appurtenances attached to the Property;

(iv)    All rents or royalties and other income from the Described Property;

(v)    All mineral, oil and gas rights and profits, water rights and stock that are part of the Described Property;

(vi)    All rights that I have in the land which lies in the streets or roads in front of, behind or next to, the Described Property;

(vii)    All fixtures that are now or in the future will be on the Described Property or on the property described in subsection (ii) of this Section;

(viii)    All of the rights and property described in subsections (ii) through (vii) of this Section that I acquire in the future;

(ix)    All replacements of or additions to the property described in subsections (ii) through (viii) of this Section; and

(x)    All of the amounts that I pay to Lender under Paragraph 2 below.

## IV.    BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (i) I lawfully own the Property; (ii) I have the right to grant and convey the Property to Trustee; and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself and the Trustee has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## COVENANTS

I promise and I agree with Lender as follows:

## 1.    BORROWER'S PROMISE TO PAY

I will pay to Lender, on time, all principal and interest due under the Secured Notes and any prepayment and late charges due under the Secured Notes.

## 2.    PAYMENTS FOR TAXES AND INSURANCE

(A)    Borrower's Obligations

I will pay all amounts necessary to pay taxes and hazard insurance premiums on the Property as well as assessments, leasehold payments, ground rents or mortgage insurance premiums (if any).

SO001C (2004-03-3)                                                                                      CA

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2010, All rights reserved

0045892312

**(B)      Escrow Accounts**

Subject to applicable law, no escrow shall be required except upon written demand by Lender, in which case, I shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; and (e) yearly mortgage insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and/or applicable law permits Lender to make such a charge. However, Lender may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay me any interest or earnings on the Funds. Lender shall give to me, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to me for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify me in writing, and, in such case I shall pay to Lender the amount necessary to make up the deficiency or shortage. I shall make up the deficiency or shortage in accordance with the requirements of the Lender, at its sole discretion, in the manner and times prescribed by RESPA.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to me any Funds held by Lender. If, under Paragraph 28, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

SD001D (2004-03-3)

CA

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003. All rights reserved.

0045892312

### 3.    APPLICATION OF BORROWER'S PAYMENTS

Unless applicable law requires otherwise, Lender will apply each of my payments under the Secured Notes and under Paragraphs 1 and 2 above in the following order and for the following purposes:

First, to pay prepayment charges due under the Secured Notes;

Second, to pay any advances due to Lender under this Security Instrument;

Third, to pay the amounts due to Lender under Paragraph 2 above;

Fourth, to pay interest due under the Secured Notes;

Fifth, to pay deferred interest due under the Secured Notes;

Sixth, to pay principal due under the Secured Notes;

Last, to pay late charges due under the Secured Notes.

### 4.    BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS

I will pay all taxes, assessments and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument.

I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will pay these amounts either by making the payments to Lender that are described in Paragraph 2 above or by making the payments on time to the Person owed them.

Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a **lien**. I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves in writing the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that Person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give to me a notice identifying the superior lien. I will pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

### 5.    BORROWER'S OBLIGATION TO MAINTAIN INSURANCE

At my sole cost and expense, I will obtain and maintain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. All of these insurance policies and renewals of the policies must include what is known as a **Standard Mortgagee Clause** to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

SD001E (2004-03-3)

CA


Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003. All rights reserved

0045892312

If I obtain earthquake insurance, any other hazard insurance, credit life and/or disability insurance, or any other insurance on or relating to the Property or the Secured Notes and which are not specifically required by Lender, I will name Lender as loss payee of any proceeds.

If there is a loss or damage to the Property, I will promptly notify the proper insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "Proceeds." Any Proceeds received will be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the Proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion, regardless of any impairment or lack of impairment of security, as follows: (A) to the extent allowed by applicable law, to the Sums Secured in a manner that Lender determines and/or (B) to the payment of costs and expenses of necessary repairs or to the restoration of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender or the insurance company stating that the insurance company has offered to settle a claim, Lender may collect the Proceeds. I will notify Lender immediately of any offer to settle a claim I receive from the insurance company. I will immediately deliver any Proceeds I receive from any insurer or other persons to Lender. Lender may use the Proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

If any Proceeds are used to reduce the amount of the outstanding balance of the Sums Secured, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

If Lender acquires the Property under Paragraph 28 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any Proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those Proceeds will not be greater than the total amount of the Sums Secured immediately before the Property is acquired by Lender or sold.

If I am required by Lender to pay premiums for mortgage insurance, I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law.

6.    **BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE OBLIGATIONS**

I will keep the Property in good repair including, but not limited to, keeping the Property free from debris, mold, termites, dry rot and other damaging pests and infestations. I will not destroy or substantially change the Property and I will not allow the Property to deteriorate. I will keep and maintain the Property in compliance with any state or federal health and safety laws, and hazardous materials and hazardous waste laws. I will not use, generate, manufacture or store any hazardous materials or hazardous waste on, under or about the Property. I will indemnify, defend and hold harmless Lender and its employees, officers and directors and their successors from any claims, damages or costs for required or necessary repair or the removal of mold, termites, dry rot, other damaging pests and infestations and hazardous waste or any other hazardous materials claim. If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

SD001F (2004-03-3)                                                                      CA

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003. All rights reserved.

0045892312

7.   **LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY**

If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (including but not limited to any manner of legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever it deems reasonable or appropriate to protect the Lender's rights in the Property. Lender's actions may include, without limitation, appearing in court, paying reasonable attorneys' fees, purchasing insurance required under Paragraph 5, above (such insurance may cost more and provide less coverage than the insurance I might purchase), and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions. Although Lender may take action under this Paragraph 7, Lender does not have to do so. Any action taken by Lender under this Paragraph 7, will not release me from my obligations under this Security Instrument.

I will pay to Lender any amounts which Lender advances under this Paragraph 7 with interest, at the interest rate in effect under the Secured Notes.  I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. Interest on each amount will begin to accrue on the date that the amount is advanced by Lender. However, Lender and I may agree in writing to terms that are different from those in this Paragraph 7. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

8.   **LENDER'S RIGHT TO INSPECT THE PROPERTY**

Lender, and others authorized by Lender, may enter upon and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

9.   **AGREEMENTS ABOUT GOVERNMENTAL TAKING OF THE PROPERTY**

I assign to Lender all my rights: (A) to proceeds of all awards or claims for damages resulting from condemnation, eminent domain or other governmental taking of all or any part of the Property; and (B) to proceeds from a sale of all or any part of the Property that is made to avoid condemnation, eminent domain or other governmental taking of the Property. All of those proceeds will be paid to Lender. If I receive any such proceeds, I will immediately deliver them to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the Sums Secured have been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, Sums Secured will be reduced only by the amount of proceeds multiplied by the following fraction: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds and settle the claim. Lender may then use the proceeds to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of the outstanding principal of the Secured Notes, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

SD001G (2004-03-3)                                                                                    CA

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

0045892312

## 10.   CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS

### (A)   Borrower's Obligations

Lender may allow a Person who takes over my rights and obligations subject to this Security Instrument to delay or to change the amount of the payments of principal and interest due under the Secured Notes or under this Security Instrument. Even if Lender does this, however, that Person and I will both still be fully obligated under the Secured Notes and under this Security Instrument.

Lender may allow 'those delays or changes for a Person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a Person for not fulfilling obligations under the Secured Notes or under this Security Instrument, even if Lender is requested to do so.

### (B)   Lender's Rights

Even if Lender does not exercise or enforce any of its rights under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 28 below to demand that I make immediate payment in full of the Sums Secured.

## 11.   OBLIGATIONS OF BORROWER, CO-SIGNORS AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS

Except as provided below, if more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured.

Any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signor"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signor's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signor's consent.

Any Person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

## 12.   MAXIMUM LOAN CHARGES

If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then: (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the outstanding principal balance of the Secured Notes or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Secured Notes.

SD001H (2004-03-3)                                                                                          CA

Documents provided by DeltaTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

0045892312

**13.   LEGISLATION AFFECTING LENDER'S RIGHTS**

If a change in applicable law would make any provision of the Secured Notes or this Security Instrument unenforceable, Lender may require that I make immediate payment in full of all Sums Secured by this Security Instrument.

**14.   NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT**

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at **8000 HANSOM DR, OAKLAND, CA  94605-4209.** A notice will be given to me at an alternative address if I give Lender notice of my alternative address. I may give notice to Lender of my alternative address in writing or by calling Lender's customer service telephone number provided on my billing statement. I may designate only one mailing address at a time for notification purposes. Except as permitted above for changes of address, any notice that must be given to Lender under this Security Instrument will be given by mailing it by first class mail to Lender's address stated in Section I.(C) above entitled, "Definitions of Words Used In This Deed of Trust," unless Lender gives me notice of a different address. Any notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

**15.   GOVERNING LAW; SEVERABILITY**

This Security Instrument and the Secured Notes shall be governed by and construed under federal law and federal rules and regulations, including those for federally chartered savings institutions ("Federal Law") and, to the extent Federal Law does not apply, by the law of the jurisdiction in which the Property is located. In the event that any of the terms or provisions of this Security Instrument or the Secured Notes are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Security Instrument or the Secured Notes.

**16.   BORROWER'S COPY**

I acknowledge the receipt of one conformed copy of the Secured Notes and of this Security Instrument.

**17.   LENDER'S RIGHTS TO RENTAL PAYMENTS AND TO TAKE POSSESSION OF THE PROPERTY**

If Lender requires immediate payment in full or if I abandon the Property, then Lender, Persons authorized by Lender, or a receiver appointed by a court at Lender's request may: (A) collect the rental payments, including overdue rental payments, directly from the tenants; (B) enter upon and take possession of the Property; (C) manage the Property; and (D) sign, cancel and change rental agreements and leases. If Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 17, I agree that the tenants may make those rental payments to Lender without having to ask (i) Lender whether I have failed to keep my promises and agreements under this Security Instrument, or (ii) me for my permission to do so.

If Lender acts to have the Property sold after a Breach of Duty as defined in Paragraph 28, I understand and agree that: (A) my right to occupy the Property ceases at the time the Property is sold; (B) I shall have no right to occupy the Property after such sale without the written consent of the new owner of the Property; and (C) my wrongful and unlawful possession of the Property may subject me to monetary damages, including the loss of reasonable rent and the cost of eviction. All rental payments collected by

SD001l (2004-03-3)                                                                                                          CA

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

0045892312

Lender or by a receiver, other than the rent paid by me under this Paragraph 17, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the Sums Secured. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees and the costs of any necessary bonds.

**18.     INJURY TO PROPERTY; ASSIGNMENT OF RIGHTS**

An assignment is a transfer of rights to another. I may have rights to bring legal action against persons, other than Lender, for injury or damage to the Property or in connection with the loan made to me by Lender and which arose or will arise before or after the date of this Security Instrument. These rights to bring legal action may include but are not limited to an action for breach of contract, fraud, concealment of a material fact, or for intentional or negligent acts. I assign these rights, and any and all proceeds arising from these rights, as permitted by applicable law, to Lender. Lender may, at its option, enforce these rights in its own name and may apply any proceeds resulting from this assignment to the Sum Secured and this Security Instrument after deducting any expenses, including attorneys' fees, incurred in enforcing these rights. At the request of Lender, I will sign any further assignments or other documents that may be necessary to enforce this assignment. I will notify Lender immediately if I believe I have the right to bring any such legal action against any persons, and will notify Lender immediately if I assert any claim or demand against or commence any legal action against any such person. If I receive any proceeds from any persons besides Lender in connection with any such claim, demand or legal action, I will immediately deliver such proceeds to Lender.

**19.     CLERICAL ERRORS**

In the event Lender at any time discovers that this Security Instrument, the Secured Notes or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from Lender, to execute such documentation as Lender deems necessary to correct any such error(s) and I also agree that I will not hold Lender responsible for any damage to me which may result from any such error.

**20.     LOST, STOLEN OR MUTILATED DOCUMENTS**

If any of the Loan Documents are lost, stolen, mutilated or destroyed and Lender delivers to me an indemnification in my favor, signed by Lender, then I will sign and deliver to Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

**21.     WAIVER OF STATUTE OF LIMITATIONS**

I will waive, within applicable law, the pleading of the statute of limitations as a defense to enforce this Security Instrument, including any obligations referred to in this Security Instrument or Secured Notes.

**22.     CAPTIONS**

The captions and headings at the beginning of each paragraph of this Security Instrument are for reference only and will not be used in the interpretation of any provision of this Security Instrument.

**23.     MODIFICATION**

This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

**24.     CONDOMINIUM, COOPERATIVE AND PLANNED UNIT DEVELOPMENT OBLIGATIONS**

If the Property is a unit in a condominium, cooperative or planned unit development, each of which shall be called the "Project," and I have an interest in the common elements of the Project, then Lender and I agree that:

(A)     If an owners association or other entity, called "Owners Association," holds title to Property for the benefit or use of the Project and its members or shareholders, the Property also includes my interest in the Owners Association and the uses, proceeds and benefits of my interest.

SD001J (2004-03-3)                                                                                                          CA

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

0045892312

(B)     The following are called the "Constituent Documents:" (i) The declaration or any other document which created the Project; (ii) By-laws of the Owners Association; (iii) Code of regulations for the Project; (iv) Articles of incorporation, trust instrument or equivalent document which creates the Owners Association; (v) The Project's covenants, conditions and restrictions; (vi) Other equivalent documents.

I shall perform all of my obligations under the Constituent Documents, including my obligation to pay, when due, all dues and assessments. If I do not pay the dues and assessments when due, Lender may, at its option, pay them. I will pay to Lender any amounts which Lender advances under this Paragraph 24 according to the terms described in Paragraph 7 above.

(C)     If the Owners Association maintains, with an insurance company reasonably acceptable to Lender, a **master** or **blanket** policy on the Project which is satisfactory to Lender and which provides insurance coverage on the terms, in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," and Lender is provided with evidence of such **master** or **blanket** policy, then: (i) Lender waives the provision in Paragraph 2(B) above for the payment to Lender of the estimated yearly premium installments for hazard insurance on the Property; and (ii) hazard insurance coverage on the Property as required by Paragraph 5 above is deemed to be satisfied to the extent that the required coverage is provided by the Owners Association policy. I shall give Lender prompt notice of any lapse in the required hazard insurance coverage. I shall provide a copy of such **master** or **blanket** policy to Lender annually.

In the event of a distribution of any hazard insurance proceeds, including without limitation any earthquake or special hazards insurance whether or not such coverage was required by Lender, in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to me are hereby assigned and shall be paid to Lender for application to the Sums Secured by this Security Instrument, with any excess paid to me. If I receive any such proceeds, I will immediately deliver them to Lender or otherwise apply them as set forth above.

I shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable to Lender in form, amount and extent of coverage.

(D)     I shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of condemnation, eminent domain or other governmental taking; (ii) any amendment to any provision of Constituent Documents unless the provision is for the express benefit of Lender or of lenders generally; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the **master** or **blanket** hazard insurance policy and/or the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

## 25.   FUTURE ADVANCES

At Borrower's request, Lender, at its option (but before release of this Security Instrument or the full reconveyance of the Property described in the Security Instrument) may lend future advances, with interest, to Borrower. Such future advances, with interest, will then be additional Sums Secured under this Security Instrument.

SD001K (2004-03-3)                                                                                    CA

EXHIBIT H to RJN iso
Motion to Dismiss SAC - Page 56

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

0045892312

26.   AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED

**Acceleration of Payment of Sums Secured.** Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

THIS SPACE INTENTIONALLY LEFT BLANK.

27.   SUBSTITUTION OF TRUSTEE

I agree that Lender may at any time appoint a successor trustee and that Person shall become the Trustee under this Security Instrument as if originally named as Trustee.

SD001L (2004-03-3)   [L01 (2006-08-1)]

CA

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2005, All rights reserved.

0045892312

28.    RIGHTS OF THE LENDER IF THERE IS A BREACH OF DUTY

It will be called a "Breach of Duty" if (i) I do not pay the full amount of each regularly scheduled payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under the Note or this Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts; or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading. If there is a Breach of Duty by me, Lender may demand an immediate payment of all sums secured.

If there is a Breach of Duty by me, Lender may exercise the power of sale, take action to have the Property sold under applicable law, and invoke such other remedies as may be permitted under any applicable law.

Lender does not have to give me notice of a Breach of Duty. If Lender does not make a demand for full payment of the Sums Secured upon a Breach of Duty, Lender may make a demand for full payment of the Sums Secured upon any other Breach of Duty.

If there is a Breach of Duty, Lender may also take action to have a receiver appointed to collect rents from any tenants on the Property and to manage the Property. The action to appoint a receiver may be taken without prior notice to me and regardless of the value of the Property.

The sale of the Property may be postponed by or at the direction of Lender. If the Property is sold, I agree that it may be sold in one parcel. I also agree that Lender may add to the amount that I owe to Lender all legal fees, costs, allowances, and disbursements incurred as a result of the action to sell the Property.

Lender will apply the proceeds from the sale of the Property in the following order: (A) to all fees, expenses and costs incurred in connection with the sale, including but not limited to trustees' and attorneys' fees, if any; (B) to all Sums Secured by this Security Instrument; and (C) any excess to the Person or Persons legally entitled to it.

29.    RECONVEYANCE

Upon payment of all Sums Secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all Secured Notes to Trustee. Trustee shall reconvey the Property without warranty to Borrower. Lender may charge Borrower a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (including the Trustee) for services rendered and the charging of the fee is permitted, whether expressly or by lack of express prohibition, under applicable law. If the fee charged does not exceed any maximum fee set by applicable law, the fee is conclusively presumed to be reasonable.

30.    STATEMENT OF OBLIGATION

Lender may collect a fee of $60.00, or such greater maximum amount as may from time to time be allowed by law, for furnishing any statement of obligation with respect to this Security Instrument or the Secured Notes.

SD001M (2004-03-3)                                                                CA

EXHIBIT H to RJN iso
Motion to Dismiss SAC - Page 58

Document provided by DataTree LLC via it's proprietary imaging and delivery system, Copyright 2003, All rights reserved.

0045892312

31.     ( X )   QUICK QUALIFYING LOAN PROGRAM

I have qualified for this loan by making statements of fact which were relied upon by Lender to approve the loan rapidly. This loan is called a "Quick Qualifying Loan." I have stated and I confirm that: (A) I do not have any other Quick Qualifying Loans with Lender; (B) I have agreed to not further encumber the Property and do not intend to further encumber the Property for at least six months after the date of the Secured Notes and this Security Instrument; and (C) If I am purchasing the Property, all of the terms of the purchase agreement submitted to Lender are true and the entire down payment is cash from my own funds.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate.

32.     ( X )   OWNER OCCUPANCY

Lender has relied upon statements of fact which I have made to qualify for this loan. I have stated and confirm that: (A) the Property is my personal and primary residence; (B) I will occupy the Property not later than 30 days after this Security Instrument is recorded; and (C) I will use the Property as my residence for at least 12 months from the date this Security Instrument is recorded.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate.

( X )   VALUE INDICATES THAT THE PARAGRAPH APPLIES.

THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.

SD001N (2004-03-3)     [N01 (2006-08-1)]                          CA


Document ... ed by DataTree LLC via it's proprietary imaging and delivery system, Copy... , All rights reserved.

0045892312

**BY SIGNING BELOW,** I accept and agree to the promises and agreements contained in this Security Instrument and in any rider(s) signed by me and recorded in proper official records.

**(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)**

**BORROWER(S):**

_____   (Seal)

ROSEMARY GREENE

**ATTACH INDIVIDUAL NOTARY ACKNOWLEDGEMENT**

SD001 (2004-03-1)        [AF1 (2004-03-1)]              Page 15                          **CA**
                         [B01 (2004-03-1)]

Documents ___ by DataTree LLC via it's proprietary imaging and delivery system. Copyright ___. All rights reserved.

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of _Alameda_ } ss.

On _25 Apr/ 2007_ before me, _D.L. Manuel-Miller, Notary Public_
     Date                         Name and Title of Officer (e.g., "Jane Doe, Notary Public")

personally   appeared _Rosemary Greene_
                                      Name(s) of Signer(s)

☐ personally known to me

☑ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_D. L. Manuel Miller_
                            Signature of Notary Public

> D. L. MANUEL-MILLER
> Commission # 1596256
> Notary Public - California
> Alameda County
> My Comm. Expires Jul 30, 2009

_D.L. Manuel-Miller_
_1596256_
_Alameda_
_Jul 30, 2009_
Place Notary Seal Above

────────── **OPTIONAL** ──────────

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**
Title or Type of Document: _Deed of Trust_

Document Date: _April 25, 2007_       Number of Pages: _16_

Signer(s) Other Than Named Above: _N.A._

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

> RIGHT THUMBPRINT
> OF SIGNER
> Top of thumb here

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

> RIGHT THUMBPRINT
> OF SIGNER
> Top of thumb here

© 2004 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402      Item No. 5907      Reorder: Call Toll-Free 1-800-876-6827

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003. All rights reserved.

Title No. 07-**59012459**
Locate No. CACTI7701-7738-2353-0059012459

**LEGAL DESCRIPTION**

**EXHIBIT "A"**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF OAKLAND, COUNTY OF ALAMEDA, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 161, TRACT 2429, FILED APRIL 20, 1904, MAP BOOK 48, PAGE 50, ALAMEDA COUNTY RECORDS.

APN: 043A-4662-081-00

CLTA Preliminary Report Form - Modified (11/17/06)

EXHIBIT H to RJN iso
Motion to Dismiss SAC - Page 62

EXHIBIT I

ADRMOP,CLOSED

# U.S. District Court
## California Northern District (San Francisco)
## CIVIL DOCKET FOR CASE #: 3:13-cv-02774-WHA

Greene v. Wells Fargo Home Mortgage et al
Assigned to: Hon. William Alsup
Case in other court:  Alameda County Superior Court, RG
             13-679537
Cause: 28:1441 Petition for Removal

Date Filed: 06/17/2013
Date Terminated: 09/09/2013
Jury Demand: Plaintiff
Nature of Suit: 220 Real Property:
Foreclosure
Jurisdiction: Diversity

**Plaintiff**

**Rosemary Greene**                        represented by  **Chris T Nguyen**
Law Offices of Joel M. Feinstein, APC
2021 Business Center Drive
Suite 213
Irvine, CA 92612
949-419-8912
Fax: 888-900-5155
Email:
chris.nguyen@joelfeinsteinlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joel Mark Feinstein**
Law Offices of Joel M. Feinstein, APC
2021 Business Center Drive, Suite 213
Irvine, CA 92612
(949) 419-8912
Fax: (888) 900-5155
Email: jfeinstein@joelfeinsteinlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Wells Fargo Home Mortgage**              represented by  **Elizabeth Christine Hehir**
*a division of Wells Fargo Bank, N.A.*
Anglin Flewelling Rasmussen
Campbell and Trytten, LLP
199 South Los Robles Avenue
Suite 600
Pasadena, CA 91101
626-535-1900
Fax: 626-577-7764
Email: chehir@mcguirewoods.com

EXHIBIT I to RJN iso
Motion to Dismiss SAC - Page 63

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Arthur Bailey**
Anglin, Flewelling, Rasmussen,
Campbell & Trytten, LLP
199 South Los Robles Avenue
Suite 600
Pasadena, CA 91101
626-535-1900
Fax: 626-577-7764
Email: rbailey@afrct.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**ETS Services, LLC**

| Date Filed | # | Docket Text |
|---|---|---|
| 06/17/2013 | 1 | NOTICE OF REMOVAL /no process from Alameda County Superior. Their case number is RG 13-679537. (Filing fee $400 receipt number 34611087034). Filed byWells Fargo Home Mortgage. (gaS, COURT STAFF) (Filed on 6/17/2013) (Additional attachment(s) added on 6/18/2013: # 1 Removal, # 2 Exhibit A B, # 3 Exhibit C, # 4 Exhibit D E F G H I) (gaS, COURT STAFF). (Entered: 06/18/2013) |
| 06/17/2013 | 2 | Certificate of Interested Entities by Wells Fargo Home Mortgage re 1 Notice of Removal, (gaS, COURT STAFF) (Filed on 6/17/2013) (Entered: 06/18/2013) |
| 06/17/2013 | 3 | **ADR SCHEDULING ORDER: Case Management Statement due by 9/19/2013. Case Management Conference set for 9/26/2013 10:00 AM in Courtroom B, 15th Floor, San Francisco.. Signed by Judge Maria-Elena James on 6/17/13. (Attachments: # 1 Standing Order)(gaS, COURT STAFF) (Filed on 6/17/2013) (Entered: 06/18/2013)** |
| 06/24/2013 | 4 | CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by Wells Fargo Home Mortgage.. (Hehir, Elizabeth) (Filed on 6/24/2013) (Entered: 06/24/2013) |
| 06/24/2013 | 5 | MOTION to Dismiss *Complaint* filed by Wells Fargo Home Mortgage. Motion Hearing set for 8/1/2013 10:00 AM in Courtroom B, 15th Floor, San Francisco before Magistrate Judge Maria-Elena James. Responses due by 7/8/2013. Replies due by 7/15/2013. (Attachments: # 1 Proposed Order)(Hehir, Elizabeth) (Filed on 6/24/2013) (Entered: 06/24/2013) |
| 06/24/2013 | 6 | Request for Judicial Notice re 5 MOTION to Dismiss *Complaint* filed byWells Fargo Home Mortgage. (Related document(s) 5 ) (Hehir, Elizabeth) (Filed on 6/24/2013) (Entered: 06/24/2013) |
| 06/25/2013 | 7 | CERTIFICATE OF SERVICE by Wells Fargo Home Mortgage *of Initial Filing* |

|  |  | *Documents* (Hehir, Elizabeth) (Filed on 6/25/2013) (Entered: 06/25/2013) |
|---|---|---|
| 06/25/2013 | 8 | CLERK'S NOTICE of Impending Reassignment to U.S. District Judge (rmm2S, COURT STAFF) (Filed on 6/25/2013) (Entered: 06/25/2013) |
| 06/25/2013 | 9 | Amended MOTION to DISMISS Complaint filed by Wells Fargo Home Mortgage. Motion Hearing set for 8/1/2013 10:00 AM in Courtroom B, 15th Floor, San Francisco before Magistrate Judge Maria-Elena James. Responses due by 7/9/2013. Replies due by 7/16/2013. (Hehir, Elizabeth) (Filed on 6/25/2013) Modified on 7/10/2013 (dtmS, COURT STAFF). (Entered: 06/25/2013) |
| 06/26/2013 | 10 | **ORDER, Case reassigned to Hon. Charles R. Breyer. Magistrate Judge Maria-Elena James no longer assigned to the case.. Signed by Executive Committee on 6/26/13. (ha, COURT STAFF) (Filed on 6/26/2013) (Entered: 06/26/2013)** |
| 07/01/2013 | 11 | **ORDER OF RECUSAL. Signed by Judge Charles R. Breyer on 7/1/2013. (beS, COURT STAFF) (Filed on 7/1/2013) (Entered: 07/01/2013)** |
| 07/02/2013 | 12 | **ORDER REASSIGNING CASE. Case reassigned to Judge Hon. William Alsup for all further proceedings. Hon. Charles R. Breyer no longer assigned to the case. Signed by Executive Committee on 7/2/13. (sv, COURT STAFF) (Filed on 7/2/2013) (Entered: 07/02/2013)** |
| 07/08/2013 | 13 | Renotice motion hearing re 9 MOTION to Amend/Correct 5 MOTION to Dismiss *Complaint* , 5 MOTION to Dismiss *Complaint* filed byWells Fargo Home Mortgage. Motion Hearing set for 8/22/2013 08:00 AM in Courtroom B, 15th Floor, San Francisco before Hon. William Alsup. (Related document(s) 9 , 5 ) (Hehir, Elizabeth) (Filed on 7/8/2013) (Entered: 07/08/2013) |
| 07/08/2013 |  | Set/Reset Deadlines as to 9 Amended MOTION to Dismiss . Motion Hearing set for 8/22/2013 08:00 AM in Courtroom 8, 19th Floor, San Francisco before Hon. William Alsup. (dtmS, COURT STAFF) (Filed on 7/8/2013) Modified on 7/10/2013 (dtmS, COURT STAFF). (Entered: 07/10/2013) |
| 07/09/2013 | 14 | RESPONSE (re 9 MOTION to Amend/Correct 5 MOTION to Dismiss *Complaint* , 5 MOTION to Dismiss *Complaint* ) filed byRosemary Greene. (Feinstein, Joel) (Filed on 7/9/2013) (Entered: 07/09/2013) |
| 07/11/2013 | 15 | NOTICE by Wells Fargo Home Mortgage *TO DISTRICT COURT THAT STATE COURT HAS RECEIVED NOTICE OF REMOVAL* (Hehir, Elizabeth) (Filed on 7/11/2013) (Entered: 07/11/2013) |
| 07/16/2013 | 16 | REPLY (re 9 MOTION to Amend/Correct 5 MOTION to Dismiss *Complaint* ) filed byWells Fargo Home Mortgage. (Hehir, Elizabeth) (Filed on 7/16/2013) (Entered: 07/16/2013) |
| 07/16/2013 | 17 | Supplemental Request for Judicial Notice re 16 Reply to Opposition/Response filed by Wells Fargo Home Mortgage. (Related document(s) 16 ) (Hehir, Elizabeth) (Filed on 7/16/2013) Modified on 7/17/2013 (dtmS, COURT STAFF). (Entered: 07/16/2013) |
| 07/26/2013 | 18 | CLERKS NOTICE Scheduling Initial CMC on Reassignment. Case |

| | | |
|---|---|---|
| | | Management Statement due by 8/15/2013. Case Management Conference set for 8/22/2013 08:00 AM in Courtroom 8, 19th Floor, San Francisco. (dt, COURT STAFF) (Filed on 7/26/2013) (Entered: 07/26/2013) |
| 07/26/2013 | 19 | **SUPPLEMENTAL ORDER TO ORDER SETTING INITIAL CASE MANAGEMENT CONFERENCE re 18 Clerks Notice, Terminate Hearings. Signed by Judge William Alsup on 10/16/12. (dt, COURT STAFF) (Filed on 7/26/2013) (Entered: 07/26/2013)** |
| 08/16/2013 | 20 | CASE MANAGEMENT STATEMENT *(JOINT) AND RULE 26(f) REPORT & [PROPOSED] ORDER* filed by Wells Fargo Home Mortgage. (Hehir, Elizabeth) (Filed on 8/16/2013) (Entered: 08/16/2013) |
| 08/19/2013 | 21 | MOTION to Appear by Telephone at Motion to Dismiss and Case Management Conference by Rosemary Greene (Feinstein, Joel) (Filed on 8/19/2013) Modified on 8/19/2013 (dtmS, COURT STAFF). (Entered: 08/19/2013) |
| 08/19/2013 | 22 | Proposed Order re 21 Notice (Other) *Request for Telephonic Appearance* by Rosemary Greene. (Feinstein, Joel) (Filed on 8/19/2013) (Entered: 08/19/2013) |
| 08/20/2013 | 23 | **ORDER DENYING PLAINTIFF'S REQUEST TO APPEAR BY TELEPHONE [re 21 MOTION to Appear by Telephone filed by Rosemary Greene]. Signed by Judge William Alsup on 8/20/2013. (whasec, COURT STAFF) (Filed on 8/20/2013) (Entered: 08/20/2013)** |
| 08/22/2013 | 25 | Minute Entry: Motion Hearing held on 8/22/2013 before Judge William Alsup (Date Filed: 8/22/2013) re 9 MOTION to Amend/Correct 5 MOTION to Dismiss *Complaint* filed by Wells Fargo Home Mortgage, Initial Case Management Conference held on 8/22/2013 before Judge William Alsup (Date Filed: 8/22/2013). (Court Reporter Kathy Wyatt.) (dt, COURT STAFF) (Date Filed: 8/22/2013) (Entered: 08/26/2013) |
| 08/23/2013 | 24 | **ORDER GRANTING MOTION TO DISMISS by Judge William Alsup [granting 9 Motion to Amend/Correct ; Plaintiff is required to E-FILE the amended document]. (whasec, COURT STAFF) (Filed on 8/23/2013) (Entered: 08/23/2013)** |
| 09/09/2013 | 26 | **FINAL JUDGMENT. Signed by Judge Alsup on 9/9/2013. (whalc2, COURT STAFF) (Filed on 9/9/2013) (Entered: 09/09/2013)** |
| 09/23/2013 | 27 | BILL OF COSTS by Wells Fargo Home Mortgage. (Hehir, Elizabeth) (Filed on 9/23/2013) (Entered: 09/23/2013) |
| 10/07/2013 | 28 | Costs Taxed in amount of $400.00, re ECF No. 27 against Plaintiff, Rosemary Greene. (ls, COURT STAFF) (Filed on 10/7/2013) (Entered: 10/07/2013) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 06/05/2015 11:41:27 | | |
| **PACER Login:** | af4719:4278538:4275559 | **Client Code:** | 93000-fr1513 |

| Description: | Docket Report | Search Criteria: | 3:13-cv-02774-WHA |
|---|---|---|---|
| Billable Pages: | 3 | Cost: | 0.30 |

EXHIBIT I to RJN iso
Motion to Dismiss SAC - Page 67

EXHIBIT J

17

Recording requested by:
**LSI Title Company**

When Recorded Mail To:
**NDEx West, L.L.C.**
**15000 Surveyor Boulevard, Suite 500**
**Addison, Texas 75001-9013**
**(866) 795-1852**

APN #: 043A-4662-081
Property Address:
**8000 HANSOM DR**
**OAKLAND, CALIFORNIA 94605**


NOTS20130015000141



2014270359    11/07/2014 10:47 AM
OFFICIAL RECORDS OF ALAMEDA COUNTY
PATRICK O'CONNELL
RECORDING FEE:        28.00

2    PGS

Space above this line for Recorder's use only

Trustee Sale No. : 20130015000141        Title Order No.: 130010621        FHA/VA/PMI No.:

## NOTICE OF TRUSTEE'S SALE

**ATTENTION RECORDER:** THE FOLLOWING REFERENCE TO AN ATTACHED SUMMARY APPLIES ONLY TO COPIES PROVIDED TO THE TRUSTOR, NOT TO THIS RECORDED ORIGINAL NOTICE.

**NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED**
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
**NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO**
**TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP**
**LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY**

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 04/25/2007. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

**NDEx West, L.L.C.,** as duly appointed Trustee under and pursuant to Deed of Trust **Recorded on 04/30/2007 as Instrument No. 2007167560** of official records in the office of the County Recorder of **ALAMEDA** County, State of CALIFORNIA.
**EXECUTED BY:        ROSEMARY GREENE,**
WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK/CASH EQUIVALENT or other form of payment authorized by California Civil Code 2924h(b), (payable at time of sale in lawful money of the United States).
**DATE OF SALE:        11/25/2014        TIME OF SALE:        12:30 PM**
**PLACE OF SALE:        AT THE FALLON STREET ENTRANCE TO THE COUNTY COURTHOUSE, 1225 FALLON STREET, OAKLAND, CA.**
**STREET ADDRESS** and other common designation, if any, of the real property described above is purported to be:
        **8000 HANSOM DR, OAKLAND, CALIFORNIA 94605**
**APN#:        043A-4662-081**

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. Said sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of

FCUS_NoticeOfTrusteeSale.rpt - Record - 05/29/2013 - Ver-38

| Trustee Sale No. : 20130015000141 | Title Order No.: 130010621 | FHA/VA/PMI No.: |

Trust, with interest thereon, as provided in said note(s), advances, under the terms of said Deed of Trust, fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is **$770,251.64**. The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located.

**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call 714-730-2727 for information regarding the trustee's sale or visit this Internet Web site www.lpsasap.com for information regarding the sale of this property, using the file number assigned to this case 20130015000141. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

FOR TRUSTEE SALE INFORMATION PLEASE CALL:
AGENCY SALES & POSTING
3210 EL CAMINO REAL, SUITE 200
IRVINE, CA 92602
714-730-2727
www.lpsasap.com

NDEx West, L.L.C. as Trustee

BY: Ric Juarez

Associate Director

NDEx West, L.L.C. MAY BE ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Dated: 11/03/2014

**CERTIFICATE OF SERVICE**

I, the undersigned, declare that I am over the age of 18 and am not a party to this action. I am employed in the City of Pasadena, California; my business address is Anglin, Flewelling, Rasmussen, Campbell & Trytten LLP, 199 S. Los Robles Avenue, Suite 600, Pasadena, California  91101-2459.

On the date below, I served a copy of the foregoing document entitled:

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT WELLS FARGO'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

on the interested parties in said case as follows:

**Served Electronically Via the Court's CM/ECF System**

**Attorneys for Plaintiff**

Aldon L. Bolanos, Esq.
LAW OFFICES OF ALDON L. BOLANOS
700 "E" Street
Sacramento, CA  95814
Tel:  916.446.2800 | Fax:  916.446.2828
Email: aldon@aldonlaw.com

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made.  This declaration is executed in Pasadena, California on **June 9, 2015**.

| Marianne Mantoen | /s/ Marianne Mantoen |
|---|---|
| (Type or Print Name) | (Signature of Declarant) |

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP