1

2

3

4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

| | |
|---|---|
| ROSEMARY GREENE, | Case No. 15-cv-00048-JSW |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION** |
| WELLS FARGO BANK, N.A., | Re: Dkt. No. 79 |
| Defendant. | |

7

8

9

10

11

12

13         Now before the Court is Plaintiff Rosemary Greene's motion for a preliminary injunction.

14  The Court has considered the parties' papers, relevant legal authority, and the record in this case.

15  For the reasons that follow, the Court hereby grants the motion.

16                                    **BACKGROUND**

17         The dispute between the parties centers on the property Plaintiff owns at 8000 Hansom

18  Drive in Oakland, California, subject to a loan from Defendant Wells Fargo Bank, N.A.  As the

19  parties are familiar with the facts and procedural history of this case, which have been set forth

20  extensively in prior orders, the Court shall not recite them in this order except where useful in

21  reaching the disposition.

22                                     **ANALYSIS**

23  **A.     Applicable Legal Standard.**

24         In order to obtain a preliminary injunction, Plaintiff "must establish that [she] is likely to

25  succeed on the merits, that [she] is likely to suffer irreparable harm in the absence of preliminary

26  relief, that the balance of equities tips in [her] favor, and that an injunction is in the public

27  interest." *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20 (2008) (citations omitted).

28  The *Winter* court also explained that because injunctive relief is "an extraordinary remedy," it

United States District Court
Northern District of California

United States District Court
Northern District of California

1   "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22

2   (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)).  Thus, "[i]n each case,

3   courts 'must balance the competing claims of injury and must consider the effect on each party of

4   the granting or withholding of the requested relief.'" *Id.* at 24 (citing *Amoco Production Co. v.*

5   *Gambell*, 480 U.S. 531, 542 (1987)).

6          In *Alliance for the Wild Rockies v. Cottrell*, the Ninth Circuit held that the "serious

7   questions" sliding scale approach survived *Winter*.  632 F.3d 1127, 1134-35 (9th Cir. 2011).

8   Thus, this Court may grant preliminary injunctive relief if Plaintiff demonstrates that there are

9   serious questions going to the merits and a hardship balance that tips sharply toward Plaintiff, if

10  the other two elements of the *Winter* test are also met. *Id.*at 1132.  This allows the Court "to

11  preserve the status quo where difficult legal questions require more deliberate investigation." *See*

12  *Sencion v. Saxon Mortg. Services, LLC*, No. 10-cv-3108 JF, 2011 WL 1364007, *2 (N.D. Cal.

13  April 11, 2011).

14  **B.      Serious Questions Going to the Merits.**

15         The operative Complaint is the Third Amended Complaint ("TAC"), which Defendant

16  answered on December 11, 2015.  Plaintiff's two remaining claims are for violations of the

17  California Civil Code, specifically, two sections enacted as part of the California Homeowner Bill

18  of Rights ("HBOR").  Plaintiff's first cause of action alleges "dual tracking" in violation of

19  California Civil Code section 2923.6.  Plaintiff's second cause of action alleges that Defendant did

20  not properly provide a "single point of contact," in violation of California Civil Code section

21  2923.7.  In support of her motion for a preliminary injunction, Plaintiff has submitted declarations

22  and other evidence.  As discussed below, the Court determines that Plaintiff has submitted

23  evidence that is sufficient to present serious questions going to the merits of her claim under

24  Section 2923.6.

25                  **1.      Plaintiff's Principal Residence**

26         Defendant contends that Plaintiff cannot demonstrate a serious question on the merits of

27  either of her claims because California Civil Code section 2924.15 provides that Sections 2923.6

28  and 2923.7 "apply only to first lien mortgages or deeds of trust that are secured by owner-

1    occupied residential real property containing no more than four dwelling units." Cal. Civ. Code

2    § 2924.15.  Further, "[f]or these purposes, 'owner-occupied' means that the property is the

3    principal residence of the borrower and is security for a loan made for personal, family, or

4    household purposes." *Id.*  Defendant provides two pieces of evidence that the Hansom Drive

5    home is not owner-occupied as Plaintiff's principal residence.  First, in a letter dated June 18,

6    2013, Plaintiff wrote a letter to Bank of America in connection with a loan modification request on

7    a different property, at 8009 Greenridge Drive, Oakland, California.  In the letter, Plaintiff states

8    that she occupies a unit in the Greenridge Drive property and will continue to do so for the

9    foreseeable future.  (Dkt. No. 87-1, Rapkine Decl. Exh. A, at 70.)  Second, in a telephone call with

10   Defendant on October 6, 2014, Plaintiff informed Defendant's representative that the Hansom

11   Drive home was her primary residence, but that she was not living in it at the moment.  (*Id.* at 49-

12   50.)

13           The law is clear that Plaintiff must allege that the subject property is owner-occupied as

14   her principal residence.  Cal. Civ. Code § 2924.15; *Mulato v. Wells Fargo Bank, N.A.*, 76 F. Supp.

15   3d 929, 957 (N.D. Cal. 2014) (citing cases).  Although Defendant contends in the opposition to the

16   motion for preliminary injunction that Plaintiff's claims should be "dismissed" on this basis,

17   however, Plaintiff does allege in the TAC that the Hansom Drive home is her "primary residence."

18   (TAC ¶ 1.)  Plaintiff further contends that the factual determination of whether a home is owner-

19   occupied as the borrower's principal residence does not turn only on whether the borrower has

20   temporarily rented out the home, but also depends on other facts.  Plaintiff cites *Rufini v.*

21   *CitiMortgage, Inc.*, in which the California Court of Appeal held that under a federal Home

22   Affordable Modification Program ("HAMP") guideline, "the home must be the borrower's

23   primary residence, as evidenced by tax returns, credit reports and other 'reasonable evidence . . .

24   such as utility bills in the borrower's name.'"  227 Cal. App. 4th 299, 307 (2014).  The Court of

25   Appeal concluded that, in the context of a demurrer:  "Rufini's allegation that he was renting out

26   his home at the time suggests he may have difficulty prevailing on a HAMP-related contract

27   claim.  But it does not establish as a matter of law that he will be unable to prove an actionable

28   breach, and it is not our task at this juncture to determine whether he will ultimately be able to do

United States District Court
Northern District of California

3

1     so."  *Id.*  Of course, *Rufini* does not interpret Section 2924.15, but it does suggest that use of the

2     phrase "primary residence" or "principal residence" may not be the end of the analysis.

3          Plaintiff asserts that she has consistently alleged that the Hansom Drive home is her

4     principal residence, even though she did not live there at all relevant times.  She proffers evidence

5     including a telephone bill, a tax payment voucher, a parking ticket, and a lease agreement showing

6     that she only rented the upstairs portion of the Hansom Drive Property, in addition to her own

7     statements and affidavits, in support of her claim that Hansom Drive remained her principal

8     residence.  Some of this evidence was submitted to Defendant as proof of occupancy on December

9     8, 2014 in support of Plaintiff's pending loan modification application.  (Dkt. No. 87-1; Dkt. No.

10    90-2.)  The Court finds that this evidence is sufficient to raise a serious question on the merits

11    regarding whether the Hansom Drive property was Plaintiff's principal residence under Section

12    2924.15, especially given the undecided state of the law regarding how to determine whether a

13    property is owner occupied as a principal residence under the HBOR.  Section 2924.15 is silent on

14    the question of the "relevant time for purposes of the owner occupied requirement."  *Mulato*, 76 F.

15    Supp. 3d at 957.  Nor do the facts of this case preclude the conclusion that Plaintiff maintained

16    two residences, "but that her 'principal residence' for purposes of the HBOR" was the Hansom

17    Drive property.  *Id.* at 958.  *Compare also Stoimenova v. Select Portfolio Servicing*, No. 15-cv-

18    1504 RMW, 2015 WL 4880943, \*5 (N.D. Cal. Aug. 14, 2015) (denying motion to dismiss federal

19    Equal Credit Opportunity Act claim based on Section 2924.15), *with Masson v. Selene Finance*

20    *LP*, No. 12-cv-05335 SC, 2013 WL 271256, \*3 (N.D. Cal. Dec. 19, 2014) ("the Property clearly

21    would not be owner-occupied if it was rented to another" or "used only for business and mail-

22    forwarding purposes").

23          The Court is troubled by the possibility that Plaintiff may have obtained a loan

24    modification for the Greenridge Drive property by making one representation to Bank of America

25    regarding her residence, while also seeking a loan modification on the Hansom Drive property by

26    making a different representation to Wells Fargo regarding her residence.  However, the letter to

27    Bank of America proffered by Defendant does not represent that Greenridge Drive is Plaintiff's

28    principal residence.  It states only that she occupied a unit there at that time and for the foreseeable

United States District Court
Northern District of California

4

United States District Court
Northern District of California

1   future, as of June 18, 2013 (more than a year before the loan modification application at issue

2   here).  Accordingly, at this stage of the litigation, the Court concludes that there is a serious

3   question on the merits under Section 2924.15.

**2.      Material Change in Financial Circumstances**

5       Defendant also contends that Plaintiff has not shown a serious question on the merits of her

6   claim under Section 2923.6 because that section provides:

> In order to minimize the risk of borrowers submitting multiple
> applications for first lien loan modifications for the purpose of
> delay, the mortgage servicer shall not be obligated to evaluate
> applications from borrowers who have already been evaluated or
> afforded a fair opportunity to be evaluated for a first lien loan
> modification prior to January 1, 2013, or who have been evaluated
> or afforded a fair opportunity to be evaluated consistent with the
> requirements of this section, unless there has been a material change
> in the borrower's financial circumstances since the date of the
> borrower's previous application and that change is documented by
> the borrower and submitted to the mortgage servicer.

13  Cal. Civ. Code § 2923.6(g).

14      Neither party has provided the Court with any authority that is helpful in determining what

15  constitutes a "material change in the borrower's financial circumstances."  Defendant asserts,

16  without authority, that a change in income from $10,723.20 in May 2012, to $9,033.24 in early

17  2014, to $9,729.58 in late 2014 is not material.  Plaintiff asserts, without citation, that her income

18  at the time of the January 2014 denial was actually $4,896.62, and that she did have a material

19  change in income.  Moreover, she asserts that once Defendant agreed to review her for a loan

20  modification application, it had a duty to do so in good faith.

21      District courts have concluded, at least at the pleadings stage, that similar changes in

22  income to those at issue here were "material."  *See, e.g.*, *Gilmore v. Wells Fargo Bank N.A.*, 75 F.

23  Supp. 3d 1255, 1263-65 (N.D. Cal. 2014) (increase of monthly income to $5,400 and $1,000

24  decrease in monthly expenses sufficient to plead a material change in financial circumstances);

25  *Rosenfeld v. Nationstar Mortg.*, No. 13-cv-04830-CAS, 2014 WL 457920, *4 (C.D.Cal. Feb. 3,

26  2014) (elimination of credit card debt sufficient to plead a material change in the borrower's

27  financial circumstances); *Vasquez v. Bank of Am.*, No. 13-cv-02902-JST, 2013 WL 6001924, *8

28  (N.D. Cal. Nov. 12, 2013) ("new employment with a higher income" sufficient to plead a material

5

1    change in the borrower's financial circumstances).  The Court concludes that this case presents a

2    serious question on the merits under Section 2923.6(g).

### 3.    Completeness of Loan Modification Application.

4        Defendant opposes Plaintiff's motion for a preliminary injunction on the ground that

5    Plaintiff has not raised a serious question going to the merits of whether Plaintiff timely submitted

6    a "complete" application for loan modification before the notice of trustee's sale was recorded.

7    Section 29223.6(c) protects a borrower who "submits a complete application for a first lien loan

8    modification. . . ."  Cal. Civ. Code § 2923.6(c).  The statute provides that "[f]or purposes of this

9    section, an application shall be deemed 'complete' when a borrower has supplied the mortgage

10   servicer with all documents required by the mortgage servicer within the reasonable timeframes

11   specified by the mortgage servicer."  Cal. Civ. Code § 2923.6(h).  Defendant contends that

12   Plaintiff's application was not complete before the notice of sale was recorded on November 7,

13   2014 because Defendant requested additional documents on October 27, November 6, November

14   7, and November 13, 2014, and because Plaintiff wrote on December 8, 2014 that she was sending

15   "additional documents requested to complete [her] loan mod application."  (Dkt. 87-1.)

16       Defendants' contention begs the question of whether, before November 7, 2014, Plaintiff

17   had provided, in her application, all the information required by Defendant for a loan modification

18   application within the reasonable timeframes specified by Defendant.  Cal. Civ. Code § 2923.6(h).

19   Defendant has provided no authority to support the contention that Section 2923.6(h) permits a

20   mortgage servicer to create a moving target where borrowers have no way of knowing whether a

21   loan modification application is complete unless the mortgage servicer tells them so.  Indeed, such

22   a rule would permit a mortgage servicer to avoid the application of Section 2923.6 by noticing a

23   trustee's sale, and then, afterward, requesting additional documents that it had not previously

24   required.  Defendant has not indicated whether requests after November 7, 2015 were follow-up

25   relating to information that had been specified, but not provided, in the original loan modification

26   application, or whether they were supplemental requests for which no reasonable timeframe had

27   previously been specified.  Plaintiff, on the other hand, has submitted evidence that her single

28   point of contact told her that no requests for additional information were currently pending and the

United States District Court
Northern District of California

6

1    application was submitted by the bank to the underwriting team for consideration on November 7,

2    2014.  On the current record, there is at least a serious question under Section 2923.6(c) and (h) as

3    to whether, before the trustee's sale was recorded on November 7, 2014, Plaintiff had provided a

4    complete application that included all documents required in the original application within the

5    reasonable timeframes originally specified by Defendant.

6                   **4.        Request for Single Point of Contact**

7            Defendant contends that Plaintiff's claim under California Civil Code Section 2923.7 fails

8    to raise a serious question on the merits because Plaintiff conceded at her deposition that she did

9    not request a single point of contact, but rather, the bank unilaterally appointed one for her.  The

10   Court notes that Federal Courts sitting in California are split on whether a borrower must request a

11   single point of contact to invoke the protections of Section 2923.7.  *See Green v. Central*

12   *Mortgage Co.*, --- F. Supp. 3d ---, No. 14-cv-04281 LB, 2015 WL 7734213, *12 (N.D. Cal. Dec.

13   1, 2015) (citing cases).  However, in the context of this case, this Court already held that Section

14   2923.7 is only triggered if the borrower has both requested a foreclosure prevention alternative,

15   and has requested that a single point of contact be provided.  (Dkt. No. 26.)  Plaintiff does not now

16   dispute this holding.  Rather, she submits a reply declaration in which she states:  "I testified at my

17   deposition on multiple occasions that I had requested a single point of contact, but those excerpts

18   were not included in the bank's filing. Let me say it again here: from the outset I always asked to

19   speak with one person, and I was always surprised and confused when I would get different

20   people."  (Dkt. No. 90-1, ¶ 5.)  However, Plaintiff does not attach any deposition excerpts to

21   support her recollection of her testimony.  On the current record, the Court finds that Plaintiff has

22   failed to raise a serious question going to the merits of her claim under Section 2923.7.

23                   **5.        Damages**

24           In Defendant's summary of argument, Defendant asserts that Plaintiff's inability to allege

25   damages is fatal to the entire TAC.  Plaintiff's damages claims for negligence and relief under

26   California's Unfair Competition Law have been dismissed.  Plaintiff seeks injunctive relief for her

27   HBOR claims, so her ability, or inability, to allege damages does not alter the Court's analysis of

28   whether she has raised a serious question on the merits of those claims.  *See* Cal. Civ. Code

United States District Court
Northern District of California

7

1   § 2924.12(a)(1).

2   **C.      Irreparable Harm.**

3           Regardless of whether the 8000 Hansom Drive residence was Plaintiff's principal

4   residence at the time that she was seeking a foreclosure prevention alternative, Defendant does not

5   dispute that it is currently her principal residence.  The loss of a residence through foreclosure

6   presents an irreparable injury.  Defendant does not contend otherwise.

7   **D.      Balance of Hardships.**

8           The subject property is currently Plaintiff's home and she asserts that its loss would be

9   catastrophic.  Defendant counters that if an injunction is granted, Plaintiff "would continue to be

10  unjustly enriched at her lender's expense."  (Opp. at 14.)  Defendant further contends that

11  Plaintiff's receipt of a loan modification in 2009 and failure to make a payment on the modified

12  loan for six years tip the balance of equities and hardships against her.  (*Id.*)  These factors weigh

13  against Plaintiff.  However, Plaintiff's benefit of continuing to own and live in the home during

14  the duration of the preliminary injunction would only be "unjust" if Defendant ultimately prevails

15  on the merits.  Moreover, the Court notes that the remedy for Plaintiff's claims under California

16  Civil Code section 2923.6 and 2923.7, if her claims are successful, would be to enjoin the sale

17  until the proper procedures are followed.  *See* Cal. Civ. Code § 2924.12(a)(1).  If the property is

18  sold before her claims are adjudicated, Plaintiff will lose this opportunity.

19          Defendant has not demonstrated that enjoining the foreclosure would result in damage to

20  the Property or otherwise threaten its security interest, except for asserting in a footnote that as

21  Plaintiff's debt continues to accrue, it has come to exceed the fair market value of the collateral.

22  (Opp. at 14-15 n.8)  If this Court determines that Plaintiff's claims have no merit and allows the

23  trustee's sale to proceed, then Defendant would be able to recover the property.  Any damages to

24  Defendant would be monetary.  On the other hand, the Court determines that permitting the

25  foreclosure sale to proceed before the Court has evaluated the merits of Plaintiff's claims would

26  risk the irreparable hardship to Plaintiff of the loss of her home.  In light of these considerations,

27  the balance of hardships tips sharply in favor of injunctive relief.  *See Alliance for the Wild*

28  *Rockies*, 632 F.3d at 1132.

United States District Court
Northern District of California

8

United States District Court
Northern District of California

1   **E.      Public Interest.**

2           "'In exercising their sound discretion, courts of equity should pay particular regard for the

3   public consequences in employing the extraordinary remedy of injunction.'"  *Winter*, 555 U.S. at

4   24 (citing *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).  The Court recognizes the

5   public interest of enforcing Defendant's secured property interests against default.  On the other

6   hand, the HBOR was enacted in California "to ensure that, as part of the nonjudicial foreclosure

7   process, borrowers are considered for, and have a meaningful opportunity to obtain, available loss

8   mitigation options, if any, offered by or through the borrower's mortgage servicer, such as loan

9   modifications or other alternatives to foreclosure."  Cal. Civ. Code § 2923.4.  The "public interest

10  favors vindicating the [California] Legislature's intent 'to have individual borrowers and lenders

11  "assess" and "explore" alternatives to foreclosure.'"  *Magana v. Wells Fargo Bank, N.A.*, No. C

12  11-03993 CW, 2011 WL 4948674, at *2 (N.D. Cal. Oct. 18, 2011) (quoting *Mabry v. Superior*

13  *Court*, 185 Cal. App. 4th 201, 223 (2010)).  Thus, the Court finds that this factor also weighs in

14  favor of granting Plaintiff's motion for injunctive relief.

15  **F.      Issuance of the Preliminary Injunction and Bond Requirement.**

16          Applying the "serious questions" sliding scale approach recognized in *Alliance for the*

17  *Wild Rockies*, 632 F.3d at 1135, the Court determines that issuance of a preliminary injunction to

18  enjoin the foreclosure sale of the Property is proper based on the serious questions raised by

19  Plaintiff's claims, the irreparable injury to Plaintiff if injunctive relief is denied, the balance of

20  hardships tipping sharply in favor of Plaintiff, and the public interest in enforcing the HBOR.

21          The Court does not reach Plaintiff's contention that collateral estoppel requires the Court

22  to grant a preliminary injunction.

23          Under Rule 65, "[t]he court may issue a preliminary injunction or a temporary restraining

24  order only if the movant gives security in an amount that the court considers proper to pay the

25  costs and damages sustained by any party found to have been wrongfully enjoined or restrained."

26  Fed.R.Civ.P. 65(c).  Defendant has a secured interest in the property and will be permitted to

27  proceed with foreclosure if the Court denies Plaintiff's claims, and has not contended that Plaintiff

28  should be required to post a further bond.  Accordingly, the Court does not require Plaintiff to post

9

1   a bond at this time.

2   **CONCLUSION**

3        For the reasons set forth above, Plaintiff's motion for preliminary injunction is

4   GRANTED.  Defendant, its officers, agents, servants, employees, and all persons acting in concert

5   with Defendant, or on behalf of Defendant, ARE HEREBY ENJOINED from directly or indirectly

6   initiating foreclosure proceedings on the Property pending further order of this Court.

7        **IT IS SO ORDERED.**

8   Dated: January 28, 2016

9

10                                         _____

11                                         JEFFREY S. WHITE
                                       United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28